JEWEL TEA COMPANY, INC., ET AL., APPELLEES, V. CITY OF GENEVA ET AL., APPELLANTS.

291 N. W. 664

FILED MARCH 29, 1940. No. 30755.

*Waring & Waring*, for appellants.

*Harry A. Spencer* and *Dwight W. Dahlman, contra.*

*J. A. C. Kennedy, Yale C. Holland, George L. De Lacy, Edward J. Svoboda, Ralph E. Svoboda, Robert K. Adams, S. J. Leon, Fred S. White* and *Louis E. Lipp, amici curiæ.*

Heard before SIMMONS, C. J., ROSE, PAINE, CARTER, MESSMORE and JOHNSEN, JJ., and ELLIS, District Judge.

PAINE, J.

A petition was filed, praying for a declaratory judgment that a certain ordinance was void, and asking, among other things, for injunction restraining the enforcement of such ordinance against solicitors and peddlers by the city of Geneva. To this, the city of Geneva and its officers filed an answer, containing several admissions and a general denial. Plaintiffs' demurrer to this answer was sustained by the court, and the city of Geneva and its officers appeal.

The Jewel Tea Company, Inc., the Grand Union Tea Company, Inc., and Larry A. Wadhams filed a petition of 18 pages against the city of Geneva and its mayor and all of its officers, setting up that on January 3, 1938, the city adopted ordinance No. 146, a portion of which reads as follows:

"Section 1. The practice of going in and upon private residences in the city of Geneva, Nebraska, by solicitors, peddlers, hawkers, itinerant merchants, and transient vendors of merchandise, not having been requested or invited so to do by the owner or owners, occupant or occupants of said private residences, for the purpose of soliciting orders for the sale of goods, wares and merchandise, and/or peddling or hawking the same, is hereby declared to be a nuisance, and punishable as such nuisance as a misdemeanor."

The ordinance provided that upon conviction for violation the offender should be fined not less than $25 nor more than $100 and costs.

It is further alleged in the petition that Larry A. Wadhams, plaintiff, as agent of the Jewel Tea Company, visits his regular customers in Geneva every two weeks, calling at a specified time of day arranged by agreement with the customer, and that all calls made by said Wadhams are for one or all of the following purposes: (1) To deliver merchandise previously ordered; (2) to take or solicit orders, in accordance with the standing agreement and understanding with each of said customers, for merchandise to be subsequently delivered; or (3) to collect amounts from said customers legally due to the Jewel Tea Company. It is alleged in said petition that plaintiffs do not solicit any orders for any merchandise upon the public streets, nor do plaintiffs hawk or peddle any merchandise of any nature in said city; that there are outstanding balances due the Jewel Tea Company of approximately $100, and that there is $50 due the Grand Union Tea Company, from their customers in said city.

It is further charged, in the fourteenth paragraph of said petition, in effect, that the mayor and city attorney have repeatedly forbade the plaintiffs from carrying on their business in Geneva, and have threatened both the agent and district manager that they, or their representatives, would be arrested and prosecuted for every stop or call made upon their customers in Geneva, and that said plaintiffs must discontinue their business in Geneva, and that said mayor and city attorney intend to put the Jewel Tea Company and Grand Union Tea Company out of business in the city of Geneva.

In paragraph 18 it is alleged: "If the said Jewel Tea Co. is prevented from making the regular calls provided for in the contracts between said company and its customers, said plaintiffs will lose the good will of said customers built up over the past twenty-five (25) years, and substantial and valuable property rights of said plaintiffs will be destroyed;" and similar allegations were made in reference to the Grand Union Tea Company.

It is also alleged in said petition that the defendant city,

through its marshal, on instructions from the mayor, arrested Earl R. Slattery, salesman for the Grand Union Tea Company, on February 1, 1939, at a time when he was calling on a regular customer, and upon trial he was convicted of violating said ordinance No. 146; that the marshal of said city, on instructions of the mayor, also arrested Larry A. Wadhams, plaintiff, on March 28, 1939, while he was calling upon his customers of the Jewel Tea Company, and that his trial is set for hearing April 11, 1939, and the plaintiffs therefore pray that the court issue an order temporarily restraining the defendants and each of them from arresting or prosecuting the said agents of the Jewel Tea Company, or Grand Union Tea Company, for soliciting orders in Geneva, and that the court render a declaratory judgment, decreeing that said ordinance is invalid, void, and unconstitutional, and at the trial make the temporary injunction permanent against the city and its officers.

The defendants filed an answer, admitting that the Jewel Tea Company and the Grand Union Tea Company are duly incorporated, and that the city of Geneva is a city of the second class, and denied each and every other allegation contained in said petition except certain admissions hereinafter made.

The defendants further allege in the answer that on March 28, 1939, the plaintiff Larry A. Wadhams, in violation of the ordinances of the city of Geneva, without having been requested or invited so to do, entered upon the premises of occupants and owners of private residences of the city of Geneva for the purpose of soliciting orders for the sale of goods, wares and merchandise; that a complaint was duly filed against Wadhams; that said action was set for trial, and shortly before trial the petition of the plaintiffs was filed, and defendants allege that the plaintiffs have a complete, full, and adequate remedy in said criminal case now pending in court entitled, "The State of Nebraska, City of Geneva vs. Larry A. Wadhams."

It is further stated that Earl R. Slattery, as alleged in plaintiffs' petition, was an agent or employee of the Grand

Union Tea Company; that he entered upon premises of residents of the city of Geneva to solicit orders for merchandise without having been invited so to do, for which violation of the ordinance he was arrested and found guilty in the police court, and that said Slattery has appealed from his conviction to the district court for Fillmore county, and defendants aver that the plaintiff Grand Union Tea Company has a full, complete, and adequate remedy at law in the criminal case which is now pending in the district court for Fillmore county, entitled "The State of Nebraska, City of Geneva vs. Earl R. Slattery."

It is further alleged that the said Jewel Tea Company and the said Grand Union Tea Company are, in truth and in fact, peddlers of groceries within the city of Geneva, and "that at irregular periods they employ salesmen who drive up and down the streets and alleys of said city with automobiles. That these salesmen follow the practice of canvassing from house to house within said city. That the said salesmen of plaintiffs' companies call upon residents of said city whether invited or uninvited at hours in the day and night time, and that said practice is in truth violation of said ordinance set forth in plaintiffs' petition."

It is further alleged that the petition of plaintiffs does not set forth and allege facts sufficient to require this court to exercise its discretion to enter a declaratory judgment decree, and the defendants, having fully answered plaintiffs' petition, pray that they may go hence without day and recover their costs expended.

To this answer of the city of Geneva and its officers, the plaintiffs filed a general demurrer, which the court sustained, and the defendants declining to plead further, the court found that said defendants and each of them are in default of answer, and that the allegations of plaintiffs' petition are true, and that the plaintiffs are entitled to a permanent injunction from the enforcement of ordinance No. 146, as prayed in said petition, from which order the defendants appeal.

In the briefs prominence is given to the fact that the

ordinance in the case at bar is practically the same as one adopted by the town of Green River, Wyoming, except as to the one clause, "for the purpose of disposing of," which was found in the Green River ordinance, but is not found in the ordinance as set out in the transcript in the instant case. However, for all practical purposes the two ordinances are identical, and we will hereafter refer to the ordinance as the Green River ordinance.

It is necessary to briefly trace the history of this Green River ordinance in the various courts which have considered its validity, especially because its discussion is the major point in the briefs in the case at bar.

Shortly after the town of Green River adopted this ordinance, it was tested in the federal court in the case of *Fuller Brush Co. v. Town of Green River*, 60 Fed. (2d) 613, decided July 15, 1932. Judge Kennedy said the question was difficult to solve, largely on account of the lack of precedent, but held that the ordinance in question was an arbitrary regulation in excess of the police power, not based upon any theory of the protection of the health, safety, morals, or general welfare of the citizens of the community, and was a violation of the constitutional rights of the plaintiff.

This conclusion is very similar to that reached by Judge Carter in holding that "A citizen clearly has the right to engage in any occupation not detrimental to the public health, safety and welfare." *Carolene Products Co. v. Banning*, 131 Neb. 429, 268 N. W. 313.

Upon appeal of the Green River ordinance case to the circuit court of appeals for the tenth circuit, Lewis, J., delivered the opinion, released in 1933, found in 65 Fed. (2d) 112, 88 A. L. R. 177, reversing and dismissing the action, holding that the Green River ordinance was an appropriate exercise of police power, and that it did not operate as an unlawful interference with interstate commerce, and that the police power extends to the prohibition of peddling and selling of goods by itinerant merchants and transient vendors.

Thereafter, under this Green River ordinance, J. L.

Bunger, a salesman for the Fuller Brush Company, was arrested and convicted of a violation of the ordinance, and his conviction in the district court for Sweetwater county, Wyoming, was appealed to the Wyoming supreme court, and the opinion is found in *Town of Green River v. Bunger*, 50 Wyo. 52, 58 Pac. (2d) 456, being released in 1936. The chief justice, in writing the opinion, discussed the decision of the tenth circuit court of appeals, where the ordinance had been upheld as a valid regulation, and affirmed the conviction as a proper exercise of local police regulation in punishing uninvited visitation of private residences by solicitors for the sale of merchandise as a misdemeanor. See, also, *McCormick v. City of Montrose*, 99 Pac. (2d) . (Colo.) 969.

But many other courts, after considering this same ordinance, have reached a different conclusion. The town of Bel Air, Maryland, enacted the Green River ordinance. The Jewel Tea Company filed a bill for a writ of injunction to restrain the officers of the town from enforcing the ordinance, to which the town of Bel Air demurred, and the demurrer being sustained, the Jewel Tea Company appealed to the court of appeals of Maryland. The bill alleged that officers of the town not only arrested their agent, Marshall, but had threatened to arrest any agents of the plaintiff if they attempted to serve their regular customers, or to secure new customers. It is said in *Jewel Tea Co. v. Town of Bel Air*, 172 Md. 536, 192 Atl. 417, that municipalities derive whatever powers they possess from the legislature; that they do not have any inherent rights,—they are all delegated, and may be changed, limited, enlarged, or taken away by a successive session of the general assembly; that the only power the town of Bel Air has to declare the solicitation of customers to be a nuisance is to find that it interferes with the health, peace, order, or good government of the town. The court finds that it has no relation thereto, but that it discriminates against the nonresident, and in favor of resident business, and thus violates the Fourteenth Amendment to the Federal Constitution.

In November, 1933, the city council of Orangeburg passed the Green River ordinance, and O. R. Farmer, a solicitor for the Fuller Brush Company, was convicted of violating the ordinance. Upon appeal to the court of general sessions, it was held that the ordinance in question was reasonable and valid as a matter of law, from which decision an appeal was taken to the supreme court of South Carolina. In the opinion (*City of Orangeburg v. Farmer*, 181 S. Car. 143, 186 S. E. 783), it is said that formerly questions of the reasonableness or unreasonableness of an ordinance were up to the legislative body enacting the law, and only when they were in conflict with constitutional statutory inhibitions would the same be declared void, but that, because of changed conditions, the court in the case of *City of Columbia v. Alexander*, 125 S. Car. 530, 119 S. E. 241, 32 A. L. R. 746, held that, where an ordinance attempted to prevent one from engaging in a lawful and legitimate occupation, such an ordinance could be impeached as unreasonable. "It cannot be denied that the enforcement of the ordinance will seriously impair, if not destroy, the defendant's lawful business. Upon its face that appears to have been the purpose of the ordinance."

The opinion in *City of Orangeburg v. Farmer, supra,* states: "The ordinance declares that the mere soliciting of the sale of merchandise in and upon private residences is a nuisance, and levies a penalty upon such facts shown. The penalty is not based upon the conduct of the salesman, nor is the same based upon any valid shown reason of protecting the public health, nor is any other fact required save and except an act which in itself is legitimate. * * * The occupation of soliciting orders from house to house is a lawful one when conducted in a proper manner. * * * Measured by the standards laid down in this court, the ordinance is unreasonable, unconstitutional on this ground, and void."

On April 13, 1937, the town council of Culpeper, Virginia, enacted the Green River ordinance, and the defendant, John H. White, was tried and convicted in the justice court. He appealed to the circuit court, waived a jury, and was tried

upon an agreed statement of facts, in part as follows: J. H. White, a solicitor for the Real Silk Hosiery Mills, Inc., an Illinois corporation, with its executive office located in Indianapolis, Indiana, solicited for the sale of hosiery and lingerie, the customer signing an order, which was mailed to Indianapolis, from which place the merchandise was sent to the customer by parcels post C. O. D. Similar orders had been solicited in the town of Culpeper for more than 15 years. If the customer was a new one, he would call at the customer's private home, present a small token or gift, and ask permission to call and show his samples the next day or later, at which time he would solicit the order. The defendant was at all times courteous, gentlemanly, and considerate, never offensive nor unduly insistent, "nor were any of his acts or practices dangerous, offensive, unhealthy, or unsafe, either as relating to the general public or the person or persons upon whom the defendant called."

Upon appeal to the supreme court in this case of *White v. Town of Culpeper*, 172 Va. 630, 1 S. E. (2d) 269, the court said that the warrant upon which the defendant was tried was procured by the town sergeant, and there was an utter lack of evidence of complaint upon the part of any of the householders of the town. It is said that, if the validity of the ordinance is upheld, it must be upon the ground that the evil at which it is aimed is a public nuisance, for if the visit of the solicitor merely offends the householder it would be a private nuisance, not punishable as a crime, citing 2 Dillon, Municipal Corporations (5th ed.) note to section 684, and several other authorities. The action of the circuit court was reversed, and the defendant discharged from custody.

An earlier case, involving a solicitor for the same company, came up from the city of Richmond, California, to the federal court, which held that an ordinance deprived the company of the liberty of contract and of property without the due process of law. *Real Silk Hosiery Mills v. City of Richmond*, 298 Fed. 126.

An exhaustive discussion of the Green River ordinance

was written in 1938, and is found in *Prior v. White*, 132 Fla. 1, 180 So. 347, which involved the conviction of a solicitor under this ordinance enacted by the city of New Smyrna, Florida. An original habeas corpus proceeding was brought in the supreme court. It was held that an ordinance imposing a penalty for mere solicitation of orders without invitation or request was unreasonable, unfair, and oppressive as applied to a solicitor taking orders for the sale of goods. It was further found:

"3. Unless a householder manifests externally in some way his wish to remain unmolested by the visits of solicitors, the solicitor may take custom and usage as implying consent to call where such custom and usage exist, as regards validity of ordinance declaring mere soliciting of orders for sale of merchandise, without request or invitation of householder, a nuisance and imposing a penalty for violation of ordinance."

"4. The act of soliciting order for sale of goods in and upon private residences without consent of owner or occupant is not a 'public nuisance' and may not be punished as a crime or misdemeanor."

"6. A municipality cannot, by an attempted exercise of its general police powers, prohibit mere soliciting of orders for sale of merchandise in and upon private residences without consent of owner or occupant, except perhaps as to householders who have in some way indicated that solicitation of business or certain designated types of business at their homes is not allowed."

"7. An ordinance declaring mere soliciting orders for sale of goods in and upon private residences without consent of owner or occupant a nuisance and imposing a penalty for violation of ordinance invades solicitor's constitutional rights."

In one of the briefs in the case at bar, our attention is called to the case of *N. J. Good Humor, Inc., v. Board of Commissioners*, 123 N. J. Law, 21, 7 Atl. (2d) 824, decided in June, 1939, as supporting the city of Geneva in the instant case. It appears that an ordinance made it unlawful

to sell ice cream within the municipality from house to house, and conviction for such violation was affirmed. In the opinion it is said that the ordinance prohibiting the peddling of ice cream 'was not unreasonable, arbitrary, or capricious, but rather a restriction only on the manner or method of sale, and while the one who actually did the selling was immune from arrest as an honorably discharged veteran, his personal immunity did not extend to his employer. But the case did not end there, for seven months later a certiorari was allowed from this decision by the court of errors and appeals of New Jersey, and on January 25, 1940, with three judges dissenting, the former judgment of the supreme court was vacated, and complaint dismissed. See 11 Atl. (2d) 113. In this last opinion it was held that an ordinance prohibiting house-to-house merchandising was not justified under the home rule act as a measure to insure the peace and quiet of a residence community, nor was the ordinance justified as a police regulation of public safety. The court said: "The exercise of the police power by a municipal corporation must be directed towards and have a rational relation to protection of a basic interest of society rather than the mere advantage of particular individuals and must be reasonable and free from arbitrariness."

The latest cases we have been able to find involving the Green River ordinance were released January 30, 1940, and March 12, 1940, and are *City of McAlester v. Grand Union Tea Co.*, 98 Pac. (2d) (Okla.) 924, and *DeBerry v. City of La Grange*, 8 S. E. (2d) (Ga. App.) 146. It is said that the federal circuit court of appeals, in *Fuller Brush Co. v. Town of Green River, supra,* held the act to be a nuisance, but did not determine whether the nuisance was public or private. In conclusion, it holds the ordinance is not regulatory, but preventative and prohibitive as against an act innocent in itself, and without surrounding facts and circumstances that would constitute the act a public nuisance, and that substantial and irreparable injury would result from its enforcement.

Because of existing and widespread unemployment, there is doubtless an increase in the number of townspeople who are attempting to support themselves by means of house-to-house solicitation in the sale of hosiery, brushes, ready-to-wear garments, groceries, home-baked products, cosmetics, and magazines, and of farmers in the sale of eggs, butter, poultry, milk, and other farm products. It is argued with considerable support that, when a house-to-house salesman becomes successful in any of these lines, he has thereby established a property right which is protected by the Constitutions of the United States and the state of Nebraska. It is admitted that such house-to-house solicitation may be a petty annoyance to some householders, but this can be prevented by a sign, which is seen in many apartment houses, "No solicitors allowed."

In Nebraska, a city of the second class is given authority by the legislature in section 17-454, Comp. St. 1929, reading in part as follows: "Preserving the Peace, Designation of Nuisances in Residence District. XXV. To prevent and restrain riots, routs, noises, disturbances or disorderly assemblages; to regulate, prevent, restrain or remove nuisances in residential parts of municipalities and to designate what shall be considered a nuisance."

We find nothing in this act which gives the city of Geneva the right to "define" a nuisance, as the legislature used the word "designate," which means to name or point out.

"Municipal power encroaching upon individual rights does not exist unless plainly conferred by the city charter or other law." *State v. Wiggenjost,* 130 Neb. 450, 265 N. W. 422. See, also, *Interstate Power Co. v. City of Ainsworth,* 125 Neb. 419, 250 N. W. 649; *Gray v. City of Omaha,* 80 Neb. 526, 114 N. W. 600.

Somewhat akin to this is the statement in *State v. McMonies,* 75 Neb. 443, 106 N. W. 454: "It is familiar law that the power given a municipality to 'regulate' does not authorize it to suppress or prohibit a trade or business, as the very essence of regulation is the existence of something to

be regulated." See 1 Dillon, Municipal Corporations (4th ed.) sec. 89.

A municipality has no power, under its general authority, to prohibit as a nuisance an occupation which is not a nuisance in fact. *Ex parte Harris,* 97 Tex. Cr. 399, 261 S. W. 1050.

Nor can the police power be exerted arbitrarily to interfere with private business, or to prohibit lawful occupations, or to impose unreasonable or unnecessary restrictions upon them under the guise of protection of the public. *Corporation of Toronto v. Virgo,* 73 Law Times Rep. 449.

In *Jay Burns Baking Co. v. Bryan,* 264 U. S. 504, 44 S. Ct. 412, 68 L. Ed. 813, the supreme court of the United States held invalid a Nebraska statute which involved an unreasonable restriction through the bread weight law, and held: "A state may not, under the guise of protecting the public, arbitrarily interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them."

Judge Rose said: "To acquire the means of supporting life by honest labor and skill is an inherent right of a law-abiding citizen and municipal restrictions thereon do not exist unless authorized and imposed in plain terms of the law." *State v. Wiggenjost, supra.*

"No doubt one may visit another's place of business from no other motive than curiosity, without incurring liability, unless he is warned away by placard or otherwise. So every man, by implication, invites others to come to his house as they may have proper occasion, either of business, of courtesy, for information, etc. Custom must determine in these cases what the limit is of the implied invitation." 2 Cooley, Torts (4th ed.) 238, sec. 248.

"A mere legislative declaration that a business or occupation, harmless and innocuous in itself, is inimical to the public interest, cannot make it so, nor render a restrictive ordinance valid, unless by reason of surrounding conditions the declaration can be said to accord with the fact, as based upon common observation and human experience." *Yee Gee v. City and County of San Francisco,* 235 Fed. 757.

"But there is no question but that, when a municipal corporation has been authorized by its charter to pass ordinances to remove and prevent nuisances, it may, for the preservation of public health, safety and convenience, provide the manner in which property within its limits shall be used, and prevent a different use of it, by fine and force if necessary. But such ordinances must not be arbitrary or unreasonable, and must clearly be for the preservation of the public health, safety or convenience." 2 Wood, Nuisances (3d ed.) 978, sec. 745.

The ordinance of the city of Geneva, under examination in the case at bar, is both prohibitory and penal in its character. It affects both personal and property rights. The power given such city to "designate" what may be public nuisances cannot be construed as including a power to absolutely prohibit legitimate business which may be pursued as of common right.

A very large number of courts, from states widely scattered, have held that the Green River ordinance is invalid and void, and not a justifiable exercise of the police powers of a city, and therefore deprives persons engaging in such business of their constitutional rights. The act which the ordinance declares to be a public nuisance is, in fact, either no nuisance at all, or in any event only a private nuisance.

In the opinion of the court, there is no aspect of a declaratory judgment in this case, and it has been considered as one seeking injunctive relief only.

Having reached these conclusions, our court accepts the logic and reasoning of the majority of courts which have passed upon this question, and the judgment of the trial court, granting a permanent injunction against the enforcement of ordinance No. 146, is hereby affirmed.

AFFIRMED.

MESSMORE, J., dissenting.

The city of Geneva is a city of the second class, as defined by the law of Nebraska. Section 17-454, Comp. St. 1929, which outlines the powers of municipalities of the class to which the city of Geneva belongs, provides: "To regulate,

prevent, restrain or remove nuisances in residential parts of municipalities and to designate what shall be considered a nuisance." Obviously, the foregoing language, which does not admit of equivocation, is a legislative power granted to the city.

In the case of *Richardson v. Braham,* 125 Neb. 142, 249 N. W. 557, this court said: "Power to act and reasonableness of action are proper tests of the validity of laws, ordinances and regulations." The city, by passing the ordinance in question, obviously intended to exercise the police power of the city, and it is not for this court to interfere with its enforcement unless its unreasonableness or want of necessity for such measure is shown by satisfactory evidence. Under well-established rules, where a municipality enacts an ordinance, pursuant to authority expressly granted, all presumptions are in favor of its validity. When an ordinance is enacted under police power and its validity is to be determined, the court, in determining its validity, will assume that the city council acted with knowledge of the conditions relating to the particular test. The test in appraising the exercise of the municipal power is whether, under the conditions present in the municipality, the exercise of the admitted power to declare nuisances is unreasonable, arbitrary or capricious.

" 'In the exercise of police power delegated by the state legislature to a city, the municipal legislature, within constitutional limits, is the sole judge as to what laws should be enacted for the welfare of the people, and as to when and how such police powers should be exercised.' *State v. Withnell,* 91 Neb. 101." *Hawkins v. City of Red Cloud,* 123 Neb. 487, 243 N. W. 431.

Primarily, local authorities are entrusted with the regulation of such matters and not the courts. The reason is obvious. The local authorities know the necessities of local situations. We must assume, then, that the council of the city of Geneva had before them all the facts with reference to the annoyance, disquietude and inconvenience occasioned to householders, caused by uninvited solicitors. I do not

believe that the ordinance here questioned, or its enforcement, directly or indirectly, encroaches upon the plaintiffs' constitutional rights. The ordinance does not prohibit or interfere, in any respect, with plaintiffs' rights or privileges of selling wares, goods and merchandise. Plaintiffs are free to carry on a business of that sort except as to the manner of soliciting orders as specified in the ordinance. Obviously, it could do so in many ways other than by disturbing the residents of the city, as prohibited by the ordinance. The objective sought by the ordinance is to denounce a particular practice of the plaintiff corporation and their solicitors or agents. They go uninvited, against the wishes of at least some of the occupants of the dwellings in the city, in and upon private premises and homes, to there solicit orders for goods, contrary to the express provision of the ordinance.

It has been uniformly held that. while legislative authority may not arbitrarily interfere with private affairs by imposing unusual and unnecessary restrictions upon a lawful business, yet a considerable latitude of discretion must be accorded to the law-making power, and if the legislation operates uniformly upon all persons similarly situated, and it is not shown that it is clearly unreasonable and arbitrary, it cannot be judicially determined to be in contravention of constitutional rights.

In the case of *Town of Green River v. Fuller Brush Co.,* 88 A. L. R. 177 (65 Fed. (2d) 112), it was held: "A municipal ordinance prohibiting, under penalty, solicitors and itinerant venders from making uninvited calls at private residences in pursuit of their occupation, is an appropriate exercise of the police power, and therefore does not deprive such solicitors and venders of their property without due process of law, or deny the equal protection of the laws." See *Town of Green River v. Bunger,* 50 Wyo. 52, 58 Pac. (2d) 456.

The ordinance questioned in the above case affirmed is analogous to the ordinance in the instant case. In order to comprehend the effect of the above holding, and in view of

our previous statements, it might be well to summarize what the city council of Green River obviously had in mind, being acquainted with all of the local conditions, as the reason for enacting the ordinance. The dogged, tenacious and sometimes pugnacious determination with which salesmen have literally thrown themselves through residential portals and at householders, the transient nature of their principal place of business, their lack of financial responsibility in many instances, and an hourly and very general tendency to defraud the unwary, must have borne considerable weight in the minds of those who have been instrumental in putting such regulatory legislation upon the ordinance books of municipalities.

It is true, as stated in the majority opinion, that, due perhaps to economic conditions, more persons are engaged in house-to-house soliciting than ever before in the history of this country. Doubtless, the city council had this fact in mind and recognized that, in the ringing of the door bell or knocking at the door four or five times a day, and often in the evening, without reference to what the householder might be doing, he or she was compelled to answer the bell and listen to a sales talk, without opportunity to compare values, or postpone buying, compelling the householder to buy, against an inner voice of discretion which tells her to wait until she can compare values. I believe that practices of like character have become so general and common as to be of judicial knowledge, and that the frequent ringing of door bells of private residences by venders and solicitors is becoming a nuisance to the occupants of homes. The ordinance in question does not mean that only a merchant, with a fixed place of business, may sell his wares; the legislation is aimed exclusively at the manner in which the goods are sold. The ordinance does not prohibit the sale of merchandise from door to door, but only the uninvited solicitation from door to door. Ordinances like and similar to the one in question have been approved in the following cases: *Town of Green River v. Fuller Brush Co., supra; Town of Green River v. Bunger, supra; City of Shreveport v. Cun-*

*ningham,* 190 La. 481, 182 So. 649; *Commonwealth v. Gardner,* 133 Pa. St. 284, 19 Atl. 550.

The validity of the ordinance in question has been challenged in that it contravenes the due process of law. The court has left the phrase undefined, leaving its determination to rest with each individual case as it arises. The test seems to swing, as do so many of our legal tests, with the pendulum of reasonableness. Although it has been intimated that the police power extends only to interests of public health, safety, peace and morals, the more correct view seems to be that it has now grown to include matters of general welfare and convenience. The police power knows no definite limits; it extends to every possible phase of what the courts deem to be the public welfare. It is a general right on the part of the public authority to abridge the rights of individuals and control their conduct, in so far as the same may be made necessary for the securing of the public convenience. Is the scope of this ordinance beyond this modern conception? I believe not. A peddling nuisance ordinance might well be construed to be within the legitimate police-power province, were it to rest alone on the public convenience.

December 11, 1939, the supreme court of Colorado determined a case involving the validity of an ordinance similar to the one in the instant case; adopted the reasoning of *Town of Green River v. Bunger, supra,* and *Town of Green River v. Fuller Brush Co., supra,* with the exception that the Colorado court did not determine the case by declaring such practice of soliciting a nuisance, but upheld the ordinance as a proper exercise of the police power, in harmony with the present trend to extend the police power to permit its exercise for the comfort, convenience and general welfare of society; and specifically held that said ordinance, prohibiting solicitation of retail business at private residences, without the request or invitation of the householders, does not violate due process clauses of state or federal Constitutions; that a city ordinance, prohibiting the soliciting of retail business in private residences, with-

out the request or invitation of the householders, does not constitute regulation of or interference with interstate commerce, within the terms of the federal Constitution. See *McCormick v. City of Montrose,* 99 Pac. (2d) (Colo.) 969.

The validity of the ordinance has been further attacked because it denies equal protection of the laws. Equal protection does not mean that all persons, regardless of circumstances, shall be treated the same. Persons may be grouped into classes. If the classification is reasonable, and if the rights and liabilities associated with each class are uniform within that class, there is no basis for constitutional condemnation on the ground that there is a deprivation of the equal protection of the laws. I need not repeat the reasons for the enactment of the ordinance. Much has been written on the subject, and there is an unwarranted fear that, by sustaining ordinances of this character, we may go far afield in denying persons the right to make a livelihood. Such a statement is capable of more than one construction. One of such constructions would be that a man's home is still his castle, and the mere fact that he has a sidewalk leading up to the door is not an open invitation to solicitors or salesmen who are uninvited. The general conception is that such accommodations are for invited guests.

I have not reviewed the effect of the pleadings and the general demurrer to the answer containing a general denial, as well as statements of fact as to the manner in which plaintiffs solicit business in the city of Geneva, and shall not enlarge on it in this dissent except to say that the demurrer admits the allegations of the answer, that the plaintiffs were violating the ordinance. The allegations of the answer assert that plaintiffs were solicitors and peddlers of merchandise, that they called indiscriminately on householders in the city at irregular intervals, without being invited. In view of the pleadings and under the circumstances, as I view them, I am unable to see a constitutional bar, or other legal reason why the ordinance in question cannot be sustained.

ROSE, J., concurs in the dissent.