GOOD HUMOR CORPORATION and Others, Respondents, *v.* THE CITY OF NEW YORK and LEWIS J. VALENTINE, as Police Commissioner of the City of New York, Appellants.

Second Department, July 6, 1942.

*Francis J. Bloustein*, Assistant Corporation Counsel [*William C. Chanler*, Corporation Counsel, *Paxton Blair* and *Raymond J. Horowitz* with him on the brief], for the appellants.

*George A. Spohr, Jr.* [*Jeremiah T. Mahoney, Pasquale E. Conforti, Peter T. Kourides, Charles Liss* and *Irving A. Cook* with him on the brief], for the respondents.

CLOSE, J. On December 29, 1941, the mayor of the city of New York approved Local Law No. 111 of the year 1941, enacted by the common council of that city. This law amended the Administrative Code of the City of New York by adding thereto a new section designated 435–14.0, which provided that " It shall be unlawful for any person to peddle, hawk, vend or sell any goods, wares or merchandise on any of the streets of the city." Persons operating or maintaining a pushcart or other vehicle under an open air market license, licensed war veterans or their widows, licensed blind persons, sellers of newspapers and periodicals, and those owning and operating farms in the city and who sell on the streets of the city produce grown on such farms, are exempted from the proscription of the local law.

Plaintiff Good Humor Corporation, engaged in the business of manufacturing and selling ice cream directly to consumers at retail, by merchandising its products from refrigerated motor cars, foot-propelled tricycles and hand carts, and plaintiff Frank Pfister, a licensed peddler and an employee of the Good Humor Corporation, commenced this action to restrain the defendants The City of New York and the Police Commissioner of that city from enforcing said local law. The other plaintiffs, likewise affected by the law prohibiting itinerant peddling, were permitted to intervene. The plaintiffs were awarded judgment declaring the local law unconstitutional on the ground that it constituted an improper and invalid exercise of the police power and restraining the defendants from enforcing or attempting to enforce said local law against the plaintiffs or their employees.

The end toward which a proper exercise of the police power must be directed is the health, safety or welfare of the public generally rather than the protection of particular individuals. The means used to accomplish the purpose for which the police power is exercised must be reasonably necessary to effect that end and not unduly oppressive upon individuals. (*Lawton* v. *Steele*, 152 U. S. 133.) An inference may be drawn from the pleadings in this action that the object of the Local Law No. 111, as reported to the common council by its committee on general welfare, was to prevent unfair competition by itinerant peddlers with storekeepers who pay rent and various taxes. If such be the true purpose of the law rather than the welfare of the public generally, it would be legislation of the kind characterized and condemned by the Court of Appeals in *People* v. *Gillson* (109 N. Y. 389) and would be invalid

as an improper exercise of the police power in favor of a special class. (*City of Buffalo* v. *Linsman*, 113 App. Div. 584; *People* v. *Kuc*, 272 N. Y. 72.) However, on the trial of the action defendants offered evidence tending to prove that some itinerant peddlers were guilty of abuses adversely affecting the public health, that some were guilty of fraudulent practices, and that in congested areas of the city the presence of itinerant peddlers obstructed the free flow of traffic and created hazardous conditions of varying degrees. The defendants did not claim that the plaintiffs in this action were guilty of such abuses nor that there was anything inherently immoral or dangerous to the public welfare in the business of itinerant peddling.

The evils existing in a legitimate business by reason of the manner in which some of its participants conduct it will not warrant the exercise of the police power to the extent of prohibiting the business entirely. (*People ex rel. Moskowitz* v. *Jenkins*, 202 N. Y. 53; *Adams* v. *Tanner*, 244 U. S. 590.) Where a business is not essentially inimical to the public welfare, the prohibition of such business can be sustained as a valid exercise of the police power only when the business is attended with certain admitted evils that cannot be prevented otherwise than by the absolute prohibition of the business. (*Murphy* v. *California*, 225 U. S. 623.) In *Booth* v. *Illinois* (184 U. S. 425, 429) it was stated: " A calling may not in itself be immoral, and yet the tendency of what is generally or ordinarily or often done in pursuing that calling may be towards that which is admittedly immoral or pernicious. If, looking at all the circumstances that attend, or which may ordinarily attend, the pursuit of a particular calling, the State thinks that certain admitted evils cannot be successfully reached unless that calling be actually prohibited, the courts cannot interfere, unless, looking through mere forms and at the substance of the matter, they can say that the statute enacted professedly to protect the public morals has no real or substantial relation to that object, but is a clear, unmistakable infringement of rights secured by the fundamental law." In the present case the defendants claim that the evils involved in itinerant peddling cannot be successfully reached unless itinerant peddling be actually prohibited. However, as noted in *Booth* v. *Illinois* (*supra*), it is the duty of the court to look through the mere form and at the substance of the matter and in so doing the defendants' assertion that the evils of itinerant peddling cannot be successfully reached will be found to be gratuitously presumed from the alleged inability of the city authorities to regulate peddling. The defendant police commissioner testified that this alleged inability to regulate applied only to the unlicensed peddlers and that

it was relatively easy to regulate licensed peddlers. It appears that licensed peddlers, who were relatively easy to regulate, might have their licenses suspended or revoked by the department of markets for violation of regulations; whereas the unlicensed peddlers were subject to criminal proceedings before city magistrates. The inability of the authorities to regulate the unlicensed peddlers is blamed on the failure of the city magistrates to impose fines or terms of imprisonment sufficient to deter them from repeating their offenses. Facilities for remedying the evils complained of are to be found in existing statutes dealing with licensing, in the sanitary laws and regulations, and in the traffic ordinances. Whatever evils exist in itinerant peddling can be successfully reached by recourse to existing laws and by the enforcement of those laws by the police and the courts having jurisdiction of the subject-matter. This local law prohibiting itinerant peddling, considered in relation to its objective, as stated by the common council's committee on general welfare, of preventing unfair competition with storekeepers, is discriminatory; and considered in relation to the means employed to effect its purported object, namely, the public welfare, absolute prohibition is not reasonably necessary to destroy the evils of itinerant peddling, for it has not been shown that such evils are beyond the successful reach of existing laws when properly enforced.

We have been referred by the defendants to the case of *Town of Green River* v. *Fuller Brush Co.* (65 F. [2d] 112), in which an ordinance of the town of Green River, Wyo., prohibiting peddlers and hawkers from soliciting orders for the sale of goods by going in and upon private premises, was upheld as a proper exercise by the town of its police power. Some jurisdictions have followed the *Green River* case, while others have refused to follow it. That case, however, is not determinative of the question presented here, for the ordinances involved are not similar. Whereas the *Green River* ordinance was merely regulatory, proscribing certain actions on the part of those engaged in a particular line of business, viz., the going upon private premises uninvited, the subject ordinance is absolutely prohibitory in character. The distinction between the two ordinances may be demonstrated by the following language of the Court of Appeals in *People* v. *Bohnke* (287 N. Y. 154, 158), in which the *Green River* case is cited: "We hold the ordinance valid. It does not prohibit pamphleteering. It regulates pamphlet distribution in private, not public, places, and gives no public officer any power of censoring the pamphlets or licensing, or refusing to license, their distribution."

An ordinance, almost identical with the one here involved, which prohibited peddling throughout a municipality, was held invalid

by the New Jersey Court of Errors and Appeals in *N. J. Good Humor, Inc.*, v. *Bradley Beach* (124 N. J. L. 162; 11 A. [2d] 113).

The invalidity of the local law under consideration must nevertheless rest upon the more fundamental ground that the city did not have the power to enact the law, rather than on the manner in which the power was exercised. Subdivision 13 of section 20 of the General City Law granted specific power to cities " To maintain order, enforce the laws, protect property and preserve and care for the safety, health, comfort and general welfare of the inhabitants of the city and visitors thereto; and for any of said purposes to regulate and license occupations and businesses." It is, of course, fundamental that " a municipal corporation has no power except such as is given to it by the Legislature, and any power thus given may thereafter be modified, diminished or recalled." (*Matter of McAneny* v. *Board of Estimate, etc.*, 232 N. Y. 377, 390.) Since the State in delegating its power to the city limited the power granted to the regulation of businesses, the city is devoid of power to prohibit a business. The power of regulation is not inclusive of the power of prohibition. " When regulation becomes destruction, it ceases to be regulation." (*Eighth Ave. Coach Corp.* v. *City of New York*, 286 N. Y. 84, 94.) In *Jewel Tea Co.* v. *City of Geneva* (137 Neb. 768, 779; 291 N. W. 664) it was stated: " ' It is familiar law that the power given a municipality to ' regulate ' does not authorize it to suppress or prohibit a trade or business as the very essence of regulation is the existence of something to be regulated.' See 1 Dillon, Municipal Corporations (4th ed.) sec. 89." Therefore, if itinerant peddling be a recognized and legitimate business, the asserted power of the defendant city to prohibit the same cannot have its origin in that section of the State law dealing with the regulation and licensing of businesses and occupations. Though subject to regulation, hawking and peddling has long been recognized as a legitimate business. (*City of Buffalo* v. *Linsman, supra; People ex rel. East Side Harlem S. Assn., Inc.*, v. *Hylan*, 118 Misc. 341; affd., 202 App. Div. 745.)

The defendants claim that the city's power to enact Local Law No. 111 is derived from section 11 of the City Home Rule Law. That section was enacted pursuant to section 12 of article IX of the State Constitution and provides in part as follows: " 1. Subject to the restrictions provided in this chapter, the local legislative body of a city shall have power to adopt and amend * * * (b) local laws in relation to * * *, the acquisition, care, management and use of its streets and property, * * *." The defendant city contends that it has plenary power to control the use of its streets for private gain. Whatever may be the extent

of the city's power to control the use of its streets, it would seem that the element of private gain is not the determining factor but whether the street user is an ordinary or extraordinary one. Itinerant peddling, in our opinion, constitutes an ordinary use of the streets although the use may sometimes become abuse. Essentially it is the going about of the merchant from place to place, meeting and dealing with his customers where he finds them. The highway and the street are the media of contact between the peddler, as seller, and the inhabitant, as purchaser, and also of transportation for the peddler. Of such street user it was said in *Decker* v. *Goddard* (233 App. Div. 139, 140): "Street user of a minor and incidental character — other than for travel — user such as will not interfere with public or private rights or privileges — is permissible and is constantly indulged in without question. Temporary stops by vehicles at the curblines for social or business purposes are reasonable and are not interdicted."

The Constitution which empowered the Legislature to give to cities the power of adopting local laws in relation to the use of their streets qualified this delegation of power with the proviso that local laws so adopted should not be inconsistent with the provisions of the Constitution or other State laws. The question with which we are concerned is not whether the city's power to adopt laws in relation to the use of its streets may in some cases include the power to prohibit the use of its streets, but whether the prohibition sought to be enforced in the present instance is inconsistent with the Constitution or other State laws. It is our opinion that the public policy of the State, as declared in its statutes dealing with peddling, is contravened by Local Law No. 111, which purports to prohibit itinerant peddling under the general grant of power over the " use of its streets " contained in City Home Rule Law, section 11. In *Mills* v. *Sweeney* (219 N. Y. 213) the court stated: "A municipal corporation, says Judge Dillon, ' cannot, in virtue of its incidental power to pass by-laws, or under any general grant of that authority, adopt by-laws which infringe the spirit or are repugnant to the policy of the State as declared in its general legislation.' (2 Dillon's Mun. Corp. [5th ed.] § 601.) " If the public policy of the State be such as to permit itinerant peddling, though subject to regulation and license, section 11 of the City Home Rule Law is ineffective to grant to cities the power of prohibiting the use of the streets to itinerant peddlers. This is not to say that a local law of a municipality may not supersede a State statute. An ordinance enacted under a lawful grant of power may supersede a State law but to do so validly the power must be conferred on the city in terms clear and explicit. (*Jewish Consumptives' Relief Soc.* v. *Town of Woodbury*, 230 App. Div. 228.)

Peddling is recognized by the common law as a legitimate business, and the public policy of the State, as expressed in its statutes, permits peddling subject to regulation and license. General Business Law, General City Law, General Municipal Law, Village Law, Town Law and Penal Law authorize or relate to the business of peddling within the State. As the city was powerless under its general grant of power to adopt laws relating to the use of its streets which would infringe upon the public policy of the State by prohibiting itinerant peddling, so also it cannot find authority to effect that end as an incidental right of its power over the use of its streets. In *People ex rel. Kieley* v. *Lent* (166 App. Div. 550; affd., 215 N. Y. 626) it was said: " The intent that municipal corporations by ordinance can supersede the State law will not be inferred from general grants of power, nor will such authority be held to exist as an implied or incidental right."

It is to be noted that the defendants concededly recognize that the general grant of power to the city to adopt laws in relation to the use of its streets was not sufficient to supersede the State law permitting veterans and blind people to peddle. Since the State in its statutes sanctions itinerant peddling, the " use of its streets " power not expressly authorizing the city to prohibit the business of itinerant peddling is just as invalid to accomplish that purpose as it is to prohibit veterans and blind people from peddling. In this regard it may also be said that if the local law in question were upheld, the untenable conclusion would be compelled that the statutory protection afforded veterans and the blind is so comprehensive as to exempt persons in those groups from a valid exercise of the police power.

The judgment declaring Local Law No. 111 of the year 1941 invalid and restraining the defendants from enforcing the same against the plaintiffs should be affirmed, with costs.

Present — LAZANSKY, P. J., JOHNSTON, ADEL, TAYLOR and CLOSE, JJ.

Judgment unanimously affirmed, with costs.