UNITED STATES BREWERS' ASSOCIATION, INC., ET AL., APPELLANTS, v. STATE OF NEBRASKA ET AL., APPELLEES, JACK LUND DISTRIBUTING, INC., INTERVENER-APPELLEE.

JOSEPH E. SEAGRAM AND SONS, INC., ET AL., APPELLANTS, v. STATE OF NEBRASKA ET AL., APPELLEES.

220 N. W. 2d 544

Filed July 18, 1974. Nos. 39278, 39325.

Perry, Perry & Witthoff, Arthur A. Whitworth, Nelson, Harding, Marchetti, Leonard & Tate, and Richard H. Williams, for appellants.

Clarence A. H. Meyer, Attorney General, Robert R. Camp, and Ginsburg, Rosenberg, Ginsburg & Krivosha, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BOSLAUGH, J.

These actions were brought to determine the constitutionality of L. B. 234, Laws 1971, as amended by L. B. 66, Laws 1972. The sections involved now appear generally as sections 53-166.01 to 53-166.17, R. S. Supp., 1972.

The plaintiffs in No. 39278 are engaged in the business of manufacturing and selling beer. The plaintiffs in No. 39325 are engaged in the manufacture of alcoholic liquors. The plaintiffs in each case market their products only through distributors. The distributors in turn sell the products to retailers.

The defendants in each case are the State of Nebraska; the Governor; and the Nebraska Liquor Control Commission, its members and secretary. The Attorney General is a defendant and Jack Lund Distributing, Inc., is an intervener in No. 39278.

L. B. 234, enacted in 1971, related only to the distribution of beer in the State of Nebraska. L. B. 66, enacted in 1972, amended L. B. 234 so that its provisions were also applicable to the distribution of alcoholic liquors in the State of Nebraska. Since the cases involve identical questions of law, they will be disposed of in one opinion.

Prior to the enactment of L. B. 234 and L. B. 66, the manufacturers of beer and alcoholic liquors were free to enter into contracts with distributors concerning the distribution of their products as they saw fit. The plaintiffs had the same rights in this regard as the manufacturers of other products. See Barish v. Chrysler Corp., 141 Neb. 157, 3 N. W. 2d 91. L. B. 234 and L. B. 66 imposed a system of regulation upon the distribution of beer and alcoholic liquors in the State of Nebraska and severely restricted freedom of contract between the parties which existed prior to the enactment of the legislation.

The statute in question provides that before a manufacturer may terminate a distributorship or establish a new, replacement, or an additional distributorship in an existing sales territory, the manufacturer must file an application with the Nebraska Liquor Control Commission. § 53-166.05, R. S. Supp., 1972. At the hearing before the commission, the burden is upon the manufacturer to establish that the application should be granted. § 53-166.08, R. S. Supp., 1972. A distributorship may be terminated only upon a showing that good cause exists. § 53-166.03, R. S. Supp., 1972.

The law states what shall not constitute good cause and what shall be considered in determining whether good cause exists. The following grounds do not constitute good cause for the termination of a distributorship: The manufacturer's desire for further sales penetration of the market; the sale by the distributor of allied products, other products, or other brands of beer; change of ownership or of executive management of a distributorship unless the manufacturer proves substantial detriment to the distribution of his products in the territory; and the refusal to purchase or accept delivery of products or services not ordered by the distributor and a refusal to enter into promotional devices of the manufacturer. § 53-166.10, R. S. Supp., 1972. In determining whether good cause has been shown for terminating a distributorship,

the commission is to consider the amount of business transacted; the investment made by the distributor and the permanency of the investment; whether the distributor has adequate warehouse facilities and other equipment and personnel; and failure of the distributor to comply with the requirements of the manufacturer which the commission finds are reasonable and material. § 53-166.11, R. S. Supp., 1972.

In determining whether good cause exists for placing an additional distributorship in an existing territory, the commission is to consider the amount of business transacted by other distributorships of the same brand or brands in comparable sales territories in the state or in neighboring states; the investment made and the permanency of the investment as compared to investments of other distributorships of the same brand or brands in comparable sales territories in the state or in neighboring states; the effect on the existing distributor of adding an additional distributorship; and whether the existing distributorship is providing adequate service and maintains adequate facilities and personnel. § 53-166.12, R. S. Supp., 1972.

In the event a manufacturer establishes that good cause exists for terminating a distributorship or adding a distributorship in an existing territory, the manufacturer is further required to show that after notice of the grounds for such good cause, the distributor failed to reasonably correct the grounds within a reasonable time.

The act further provides that no manufacturer shall induce or coerce any distributor to accept delivery of any alcoholic liquor, advertisement, or other commodity not ordered by the distributor; no manufacturer shall induce or coerce any distributor to enter into any agreement to do "any other act unfair to the distributor" by threatening cancellation or additional competition in the existing sales territory; no manufacturer may cancel any distributorship "unfairly, without due regard to the equities of

the distributor"; and no manufacturer may fail or refuse to deliver any alcoholic liquor publicly advertised for immediate sale within 60 days after receiving a distributor's order. § 53-166.02, R. S. Supp., 1972.

Violation of the act is punishable by suspension or revocation of the violator's license and by fine or imprisonment. § 53-166.14, R. S. Supp., 1972; § 53-1,100, R. R. S. 1943.

The plaintiffs raise a number of objections to the validity of the statute in question. Among their principal contentions they claim the act impairs the obligation of contracts; unduly restricts the right of freedom to contract; is vague and indefinite; tends to destroy competition and foster monopolies; and bears no reasonable relation to the public health and welfare.

It is apparent that the act, if valid, and if applicable to existing contracts between the plaintiffs and their distributors, would destroy many rights which the plaintiffs otherwise would have in regard to termination of distributorships, establishing additional distributorships, and the managing of the marketing of their products. In Globe Liquor Co. v. Four Roses Distillers Co. (Del.), 281 A. 2d 19, the Supreme Court of Delaware held the Franchise Security Law of that state invalid as an impairment of the obligation of contract because of the substantive change the act made in the rights and obligations of a distributor's contract. In a case involving the South Carolina act for the "Regulation of Manufacturers, Distributors and Dealers," the act was held not applicable to existing contracts. Superior Motors, Inc. v. Winnebago Industries, Inc. (U.S.D.C., D.S.C.), 359 F. Supp. 773. See, also, A.F.A. Distributing Co., Inc. v. Pearl Brewing Co. (C.A., 4th Cir.), 470 F. 2d 1210. A similar construction of the Nebraska law would avoid a declaration of invalidity on the ground of contract impairment. It would not answer the other contentions made by the plaintiffs.

Freedom to contract and to acquire and sell property in a lawful manner are valuable constitutional rights. The power of the Legislature to regulate and restrict the exercise of these rights is limited by the Constitution of this state and of the United States.

Measures adopted by the Legislature to protect the public health and secure the public safety and welfare must have some reasonable relation to those proposed ends. A citizen has a constitutional right to own, acquire, and sell property; and if it is apparent that a statute under the guise of a police regulation does not tend to preserve the public health, safety, or welfare but tends to stifle legitimate business by creating a monopoly or trade barrier, it is unconstitutional as an invasion of the property rights of the individual. Lincoln Dairy Co. v. Finigan, 170 Neb. 777, 104 N. W. 2d 227.

The exercise of the police power must be directed toward and have a rational relation to the basic interest of society rather than the mere advantage of particular individuals. Jewel Tea Co., Inc. v. City of Geneva, 137 Neb. 768, 291 N. W. 664. A police regulation cannot arbitrarily invade private property or personal rights. There must be some clear and real connection between the assumed purpose of the law and its actual provisions. Chicago, B. & Q. R.R. Co. v. State, 47 Neb. 549, 66 N. W. 624.

A regulatory statute adopted by virtue of the police power which has no reasonable relation to the public health, safety, and welfare is invalid. Blauvelt v. Beck, 162 Neb. 576, 76 N. W. 2d 738. The test of validity is the existence of a real and substantial relationship between the exercise of the police power and the public health, safety, and welfare. Stahla v. Board of Zoning Adjustment, 186 Neb. 219, 182 N. W. 2d 209. A statute, under the guise of a police regulation, which does not tend to preserve the public health, safety, and welfare is an unconstitutional invasion of the personal and property

rights of the individual. Golden v. Bartholomew, 140 Neb. 65, 299 N. W. 356.

The legislation in question has two declared purposes: The fostering and promoting of temperance and obedience to the law, and the protection of distributors against termination of their franchises without cause. The effect of the act upon temperance or obedience to the law is remote and speculative. It would not regulate the retail distribution of products and would have little or no effect upon consumption of the product by the public. The only possible effect of the act in this regard is that it would transfer control of the distribution of a particular product from the manufacturer of that product to the distributor. There is no reason to believe that distributors collectively desire to sell less products than do the manufacturers. There is no reasonable relationship between the act and the fostering or promoting of temperance and obedience to the law, and it cannot be justified on that ground.

With respect to the protection of distributors against termination of their franchises without cause, the act appears to go beyond any other statute of which we are aware.

The Federal Automobile Dealers Franchise Act creates a cause of action for damages for cancellation or nonrenewal of a franchise not in good faith. See 15 U.S.C.A., §§ 1221 to 1225. Lack of good faith under the federal act has been construed to mean coercion or intimidation. There must be a wrongful demand coupled with a threat of termination. See Berry Bros. Buick, Inc. v. General Motors Corp., 257 F. Supp. 542, affirmed, 377 F. 2d 552. The federal act does not prevent termination, nonrenewals, cancellations, inducements to resign distributorships, or the establishing of additional distributorships. It only protects against coercion and intimidation in termination or nonrenewal.

In contrast to the federal law the Nebraska act locks

in the present distributors and places a severe burden upon a manufacturer who wants to make any change in the distribution of his product. The act even provides for "the succession" of distributorships. Change of ownership or executive management is not good cause unless the manufacturer is able to prove to the satisfaction of the commission there will be "substantial detriment" to the distribution of his products.

The administration of the law is placed in the hands of the Nebraska Liquor Control Commission with but little in the way of standards to guide the commission. The act is replete with terminology which is vague and indefinite. The commission is to determine whether requirements set by the manufacturer are "reasonable and material." Manufacturers are prohibited from doing any act "unfair to the distributor," and from "unfairly, without due regard to the equities of the distributor" canceling or failing to renew the franchise. A Colorado statute using similar terminology was held to deny due process because it failed to provide an ascertainable standard of guilt. General Motors Corp. v. Blevins, 144 F. Supp. 381.

Assuming that good cause exists, a manufacturer may not commence proceedings under the act until after he has notified the distributor and waited "a reasonable time" to see if the distributor will fail to reasonably correct matters. Upon filing an application, a date for hearing within 90 days is to be set. Thereafter continuances for up to 180 days may be granted. A complaint against a manufacturer must be heard within 20 days.

There is a middle ground between freezing the channels of distribution and allowing a manufacturer absolute power to do as he pleases. Berry Bros. Buick, Inc. v. General Motors Corp., *supra*. We conclude that the act in question is an unreasonable invasion of the personal and property rights of the plaintiffs and must be declared unconstitutional.

The judgment of the District Court is reversed and the cause remanded with directions to enter a judgment declaring the statute unconstitutional.

REVERSED AND REMANDED WITH DIRECTIONS.