REQUESTED BY: Dear Senator Kelly:
You have submitted to us a proposed amendment to LB 263. This amendment would provide that when a construction contract exists calling for a fixed price, and the sales and use tax rate is increased during the term of the contract, the contractor may apply for a refund of the increased amount of tax paid. In order to qualify, the contractor must file the contract with the Department of Revenue within sixty days of his becoming legally bound to perform the contract.
A somewhat similar provision was contained in the original Sales Tax Act, passed in 1967. Section 77-2703(1)(i) provided for a refund of tax paid on the purchase of tangible personal property used in the performance of a construction contract for a fixed price entered into before the effective date of the act. In Anderson v. Tiemann,182 Neb. 393, 155 N.W.2d 322 (1967), numerous attacks were made on the constitutionality of the act, but that particular provision was not discussed. We can, in any event, see no constitutional reason why the Legislature cannot make such a provision, so that persons can enter into contracts without the danger that the building will cost more, or that the contractor will have to pay unexpected taxes out of his contract price.
However, the amendment leaves some unanswered questions. Many contracts will take several years to complete. What will be the situation of a contractor whose contract was entered into more than sixty days before the effective date of the act? He cannot comply with the sixty day requirement, so, under the literal language of the amendment, he would not qualify for a refund if the sales tax is increased before the completion of the contract. This might raise an unreasonable classification question, in violation of Article III, section 18, of the Nebraska Constitution, or the equal protection clause of the Fourteenth Amendment to the Federal Constitution.
We also call attention to the fact that the sixty day clause will almost require all contractors to file all of their contracts with the Department of Revenue, whether or not a change in the tax rate has been put into effect, or is even expected, in order to protect themselves against an unexpected change. This does not raise a constitutional or legal question, but will, no doubt, be a nuisance for the Department of Revenue, who can be expected to receive thousands of such contracts.
The administration of the law will be difficult. One problem that will occur is with respect to changes in the construction contract. Almost all such contracts are modified from time to time, as the owner decides to get more expensive equipment, or enlarge or alter the plans. Should the modifications of the plans, involving increased expenditures for personal property, entitle the contractor to refunds on the increased expenditures for personal property? The bill does not say, but even if it did, we anticipate that making the necessary factual determinations would be very difficult.
In short, there may be some constitutional questions with respect to contracts executed more than sixty days before the effective date of the act, and there will be considerable difficulties in administering the law.
You say that you are considering another concept, which has not yet been drafted. Under this concept, the increased tax would be collected, but would be the responsibility of the owner, who would be required to either pay it directly to the Tax Commissioner, or to pay it to the contractor.
To require the owner to pay it directly to the Tax Commissioner would create an administrative nightmare for the Tax Commissioner and the retailer selling the personal property. Let us suppose the tax is increased from 3 to 3 1/2 per cent. The contractor may purchase personal property from dozens of suppliers. Let us assume he purchases $200 worth of such property from one retailer. He pays $6.00 tax to the retailer, and informs him the other $1.00 is to be paid by the owner. The retailer must then keep a record of the sale and the name of the owner, the contractor, etc., so he can justify having collected only $6.00 when he is audited. The Tax Commissioner must then try to collect $1.00 from the owner.
This will hold true for all of the suppliers who sell personal property to be used for the contract in question. The administrative cost of collecting such tax from the owner would unquestionably far exceed the tax collected.
The other alternative, to have the contractor pay the increased tax at the time of purchase, and collect it from the owner, does not create such administrative problems, but may run into constitutional difficulties.
It would seem that the question of who should bear the burden of an increase in sales tax between the time of the execution of a construction contract and the purchase of necessary personal property is one which can, and should, be determined in the contract itself. The contract can contain a specific provision on the question, or the court can decide it, in the absence of such a provision. We fail to see how society has any interest in the question, or how any public policy is involved. In United States Brewers Associationv. State, 192 Neb. 328, 220 N.W.2d 544 (1974), the court said:
 "Freedom to contract and to acquire and sell property in a lawful manner are valuable constitutional rights. The power of the Legislature to regulate and restrict the exercise of these rights is limited by the Constitution of this state and of the United States.
". . . .
 "The exercise of the police power must be directed toward and have a rational relation to the basic interest of society rather than the mere advantage of particular individuals. . . ."
Contractors can provide in their contracts that the owner shall pay any increase in sales tax. By the same token, owners can refuse to agree to do so, and insist that the contractor pay such increase. It is a matter for negotiation, and we can perceive no public policy that is involved. We therefore question whether a statutory provision requiring reimbursement of the contractor by the owner would withstand a constitutional attack.