REQUESTED BY: Senator Don Wesely Member of the Legislature State Capitol Building Lincoln, Nebraska 68509
Dear Senator Wesely:
In your letter of February 23, 1981, you ask our opinion as to whether the authority that would be granted to cities and villages by LB 257, section 1, to establish minimum energy efficiency standards and to apply them to existing buildings already belongs to the cities and villages. That portion of LB 257 which amends Neb.Rev.Stat. § 18-1720
(Reissue 1977) reads as follows:
 (2) For the purposes of this section, the term nuisance shall include any building which does not meet minimum standards for energy efficiency established by such city or village. All cities and villages may be ordinance establish minimum standards for energy efficiency designed to prevent the unnecessary waste of nonrenewable energy resources in existing buildings.
You have posed a very difficult question, and one to which there is perhaps no concrete answer. First, note that Neb.Rev.Stat. § 81-1618 (1980 Supp.) already grants to cities and villages the power to adopt and enforce lighting and thermal efficiency standards within the parameters established by the Nebraska Building Energy Conservation Standard. This authority, however, applies only to new construction or substantial renovations and not to existing buildings.
The proposed amendment would allow cities and villages to enforce minimum energy efficiency standards by treating energy inefficient buildings as nuisances. Under Neb.Rev.Stat. § 18-1720 (Reissue 1977), cities and villages already have the power to define and regulate nuisances. Of course, an energy inefficient building appears to be a very exaggerated concept of a nuisance as that term is commonly used and defined. A public nuisance is generally defined as something that `injuriously affects the safety, health, or morals of the public, or works some substantial annoyance, inconvenience, or injury to the public.' 58 Am.Jur.2d, Nuisances, § 7. A review of Nebraska's statutes and case law dealing with public nuisances generally shows that this label has been applied to those situations or activities which have posed a direct threat to the public health, safety, morality and welfare. It is perhaps arguable in this day and age of energy shortages and great concern over the future of nonrenewable energy resources that an energy inefficient building could somehow be construed as a public nuisance. It is at least not in the general public interest. Nevertheless, the effect of an energy inefficient building on the public as a whole is at best indirect and of only possible long term consequences. With nothing more than the existing power under § 18-1720 a very substantial showing of a deleterious effect on the public would have to be made before the categorization of an energy inefficient building as a public nuisance would likely be upheld. Of course, LB 257 would appear to solve part of that problem by defining such a building as a public nuisance.
It should be noted that Neb.Rev.Stat. § 18-132 (Reissue 1977) gives the power to cities and villages to adopt local building, fire, electrical, plumbing and other codes. Conceivably, such codes could include an energy efficiency standard. Additionally, for cities of the metropolitan class, Neb.Rev.Stat. § 14-102(25) (Reissue 1977) grants the authority to make and enforce police regulations for the general welfare, health, and safety of the city and the inhabitants thereof. The other classes of cities are also given the general authority to enact ordinances to promote the peace, good government, and general welfare of the city and for the promotion of the Public health, safety and welfare of the inhabitants, Neb.Rev.Stat. §§ 15-263, 16-246,17-505 (Reissue 1977). These statutes have generally been construed to allow cities and villages to enact ordinances that are necessary or fairly implied in order to carry out powers which have been expressly granted by statute.
It is thus conceivable that grant of police power under these sections could be construed to allow cities and villages to adopt and enforce energy efficiency standards which would affect existing buildings. Two problems arise in this area, however. The first problem is that the Nebraska Supreme Court has generally required a strict construction of the powers granted to cities and villages.
 The rule has long been established in this state that a municipal corporation may exercise only such powers as are expressly granted, those necessarily or fairly implied in or incidental to powers expressly granted, and those essential to the declared objects and purposes of a municipality. Statutes granting powers to municipalities are to be strictly construed, and where doubt exists, such doubt must be resolved against the grant.
Briar West, Inc. v. City of Lincoln, 206 Neb. 172, 175,176, ___ N.W.2d ___ (1980). There is, of course, no specific grant of power to the cities and villages to implement such energy standards as they would apply to existing buildings. It is arguable whether or not such a power could be necessarily implied from the existing powers. Nevertheless, a strict construction of existing statutes would most likely not permit the adoption of such an energy efficiency standard as it would apply to existing buildings.
The second problem with such an approach has been enunciated by the Nebraska Supreme Court as follows:
 The right to full and free use and enjoyment of one's property in a manner and for such purposes as the owner may choose, so long as it is not for the maintenance of a nuisance or injurious to others, is a privilege protected by law, and one of which a property owner may not be deprived without due process of law. The owner's right to use his property is subject, however, to reasonable regulation, restriction, and control by the state in the legitimate exercise of its police powers. The test of legitimacy is the existence of a real and substantial relationship between the exercise of those powers in a particular manner, and the peace, public health, public morality, public safety, or the general welfare of the city.
 A police regulation cannot arbitrarily invade private property or personal rights.
 There must be a reasonable relationship between the object the ordinance seeks to accomplish and the means by which it operates.
Eckstein v. City of Lincoln, 202 Neb. 741 at 744,277 N.W.2d 91 (1979). Stated differently, `A regulatory statute adopted by virtue of the police power which has no reasonable relation to the public health, safety, and welfare is invalid.' United States Brewers' Assn., Inc. v. State,192 Neb. 328, 333, 220 N.W.2d 544 (1974).
The requirement that existing buildings comply with a minimum energy efficiency standard is in reality such an interference in the use of one's property. In that regard it would be necessary to make a substantial showing that a building which is not energy efficient, is adverse to the public health, safety, or welfare. It is certainly arguable, at this point in time, whether or not the conservation of energy has risen to such a critical level.
Thus while it is possible to argue that cities and villages have the power to enact and enforce minimum energy efficiency standards for existing buildings under the presently enacted laws of this state, the safer approach, using the strict construction standard required by the Nebraska Supreme Court, would be that the present laws do not grant such powers to the cities and villages.
You have also asked, that in the event such powers are not presently available to the cities and villages, whether § 18-1720 is the correct section to amend in order to grant that authority. As indicated, § 18-1720 deals with nuisances and we have already discussed whether or not an energy inefficient building could reasonably be construed as a nuisance under the traditional definitions of a public nuisance. While it probably is within the power of the Legislature to define such a building as a public nuisance, it would still seem to be necessary to be able to make a showing that such an interference with an individual's use of his property bears a reasonable relationship to the maintenance of the public welfare.
Several other statutes have been referred to in this opinion which could conceivably be amended to grant authority to cities and villages to adopt and enforce a minimum energy efficiency standard that would apply to existing buildings. Possibly there are others, but the necessity for a prompt response to your question prohibits a detailed examination of all of the current laws at this time. Whether the amendment of any of these statutes would be more appropriate than another depends, or course, upon the manner in which the Legislature wishes to grant this particular power to the cities and villages. In this regard it is perhaps inappropriate for the Attorney General to say which existing statute would be the best to amend in order to achieve the intended legislative purpose. Such a determination is much more appropriately a function of the Legislature.
Very truly yours, PAUL L. DOUGLAS Attorney General John Boehm Assistant Attorney General