(June 29, 1904.)

## IN RE D. C. ABEL.

[77 Pac. 621.]

LICENSE TAX—RESTRAINT OF TRADE—INTERSTATE COMMERCE—CON-STITUTIONAL LAW.

1. Under the provisions of an act providing for the licensing of peddlers, hawkers and solicitors and prescribing penalty for failure to comply with the provisions of said act, approved March 16, 1901 (Sess. Laws 1901, p. 155), an agent or solicitor for a wholesale merchant, which agent has the goods which he is selling in this state, is required to pay the license tax provided by said act before he can legally do business in this state.

2. The phrase "taking orders," as used in the eighth section of said act, does not contemplate that the runner shall have the goods with him at the time of the sale, but in the common acceptation of the phrase, the agent or runner sells the goods by sample, taking orders therefor, and thereafter delivers the goods.

3. That part of section 8 of said act, by which it is sought to confine the taking of orders for goods sold to merchants only, is clear legislation and in contravention of both federal and state constitutions, but as the remaining part of said act is capable of being enforced in accordance with the legislative intent wholly independent of that provision, that provision is rejected therefrom and the remaining part thereof permitted to stand.

4. That provision of said section 8 referring to peddlers and hawkers in farm products applies to farm products of other states as well as those of the state of Idaho, and is not class legislation, and in no manner interferes with interstate commerce.

5. Internal and domestic commerce are subject to the taxing and police power of the state.

(Syllabus by the court.)

ORIGINAL application for a writ of *habeas corpus*. Writ denied.

The facts are stated in the opinion.

Forney & Moore, for Petitioner.

This law is class legislation; it grants special immunities to special classes; it violates the rule of equality before the law; it violates section 19, article 3 of the constitution of Idaho; and

also section 5 of article 7 of the constitution of the state of Idaho. (*Brooks v. Hyde,* 37 Cal. 366, 375; *Ex parte Yale,* 24 Cal. 241, 85 Am. Dec. 62; *Youngs v. Hall,* 9 Nev. 218; *Cohen v. Wright,* 22 Cal. 293; *Ex parte Jentzsch,* 112 Cal. 468, 44 Pac. 803, 32 L. R. A. 664; *Van Harlingen v. Doyle,* 134 Cal. 53, 66 Pac. 45, 54 L. R. A. 771.)   It is one of the highest privileges of the citizen that he may engage in legitimate business on equal terms, the same terms granted to all citizens. (Cooley's Constitutional Limitations, 4th ed., p. 393.)   It is further contended that the law in question is in violation of section 2 of article 4 of the constitution of the United States, and of section 1 of the fourteenth amendment of the constitution of the United States.   (*Union Sewer Co. v. Connally,* 99 Fed. 354; *Brown v. Jacobs Pharmacy,* 115 Ga. 429, 90 Am. St. Rep. 126, 41 S. E. 553, 57 L. R. A. 547; *State v. Waters Pierce Oil Co.* (Tex. Civ. App.), 67 S. W. 1057; *State v. Garbroski,* 111 Iowa, 496, 82 Am. St. Rep. 524, 82 N. W. 959, 56 L. R. A. 570; *In re Langford,* 57 Fed. 570; *Ex parte Westafield,* 55 Cal. 550, 36 Am. Rep. 47; *State ex rel. Garrabad v. Dering,* 84 Wis. 585, 54 N. W. 1104, 19 L. R. A. 858; *Pasadena v. Stimpson,* 91 Cal. 238, 27 Pac. 604; *Steed v. Harvey,* 18 Utah, 367, 72 Am. St. Rep. 789, 54 Pac. 1011; *Apex etc. Co. v. Garbade,* 32 Or. 582, 52 Pac. 573, 54 Pac. 367, 882.)   In the case of *Chilvers v. People,* 11 Mich. 43, the court says the object of a license is to confer a right that does not exist without a license.   A mere tax imposed upon a business or occupation, therefore, is not a license unless the license confers a right or privilege as to the business which would not otherwise exist.   (Cooley's Constitutional Limitations, 4th ed., 242, 393; Tiedeman's Limitation of Police Power, 278.)   A very interesting discussion of this subject has recently been made by Judge Bartsch of the supreme court of Utah, in *Cache County v. Jenson,* 21 Utah, 207, 61 Pac. 303; *State v. Hinman,* 65 N. H. 103, 18 Atl. 194, 23 Am. St. Rep. 22, and note.   This is the third brief filed by petitioner in this case.   In order that the court may be as fully advised as possible as to the position of the petitioner, we have taken the liberty of citing these additional authorities: *Simrall v. City of Covington,* 90 Ky. 444, 29 Am. St. Rep. 398; *Sayre Borough v. Phillips,* 148 Pa. St. 482, 33 Am.

St. Rep.' 843; *Chaddock v. Day,* 75 Mich. 527, 13 Am. St. Rep. 468; *Nichols v. Walters,* 37 Minn. 264, 33 N. W. 800; *State v. Hammer,* 42 N. J. L. 435.

Attorney General Bagley, for the State, files no brief.

SULLIVAN, C. J.—This is an original application to this court for a writ of *habeas corpus* and involves the constitutionality of an act approved the 16th of March, 1901. (Sixth Sess. Laws, p. 155.) The following facts appear from the record: That the petitioner is a resident of the state of Iowa and was, at the time of his arrest, an agent of Mason & Abel, wholesale merchants of St. Louis, Missouri; that the said Abel was traveling through Latah county as such agent and solicitor and selling buggies at retail to various people in Latah county at the time of his arrest. He was brought before the court on complaint of the district attorney of Latah county and fined, and is now serving a term of imprisonment in the county jail in default of the payment of said fine. The case was submitted to the trial court on an agreed statement of facts, which statement contains the following: That the petitioner was the agent and solicitor of the firm above named, which firm is the manufacturer and wholesale dealer of buggies; that the petitioner was the duly authorized agent and solicitor of said firm for buggies in the state of Idaho, and as such agent and solicitor he engaged in the business of selling and offering to sell buggies in the state of Idaho, by delivering to the purchaser at the time of sale the buggies so sold, and that on the thirteenth day of May, 1904, in said county, the petitioner sold to one Charles Hobart, and delivered the same to him, a certain buggy belonging to said firm; that neither the petitioner nor said firm at the time of such sale had procured a license from the county auditor of said county before engaging in said business and making said sale, as required by the above-mentioned law. It is further agreed that prior to the commencement of this action the board of county commissioners of said county fixed the license under said act as follows: Peddlers or hawkers on foot, $25 per year; peddlers or hawkers with wagon, $50 per year.

Section 1 of said act makes it unlawful to peddle without a license. Section 2 provides that every peddler or hawker, trav-

eling with a pack and on foot, shall pay a license of not less than $25 nor more than $50 per year. Section 3 provides that every peddler or hawker, traveling with a wagon or other vehicle, shall pay a license of not less than $50 nor more than $100 per year. Section 4 provides that every peddler or solicitor taking orders for groceries, clothing, hardware, or other mercantile establishments shall pay a license of not less than $75 nor more than $125 per year. Section 5 provides that the money so received for licenses shall be turned into the general fund of the county. Section 6 provides that every peddler or hawker shall be compelled to exhibit his license when called upon by any party to whom he is endeavoring to make a sale of goods. Section 7 provides that no license shall continue for a less period than one year. Section 8 is as follows: "The provisions of this act shall not be construed to apply to runners traveling for wholesale houses and taking orders from merchants only, nor to peddlers or hawkers in farm products." Section 9 provides the penalty for the violation of the provisions of said act. Section 10 makes it the duty of the county commissioners to fix the amount of such license, and provides that the county auditor shall issue such licenses upon payment of the prescribed fee.

It is first contended by counsel for the petitioner that under the provisions of said section 8, that hawkers or peddlers traveling for wholesale houses may take their goods with them, take orders from merchants, and deliver the goods sold to the merchants at the time of the purchase, and that hawkers and peddlers of farm products may sell indiscriminately both to merchants and others, and contend that said law was enacted for the benefit of wholesale houses and for the benefit of merchants only, in that it permits them to buy from peddlers or hawkers whatever goods they may wish and have them delivered at the time of the purchase, while it prevents every person not a merchant from purchasing from such peddler or hawker and receiving his goods at the time of the purchase. We cannot agree with these contentions of counsel. Said section does not authorize the runners or drummers traveling for a wholesale house to carry the goods to be sold with them. The phrase "taking orders," as used in said section, does not contemplate that the

runner shall have the goods with him at the time of the sale and deliver them; that would be a sale and delivery of the goods if that were done, and not taking orders for goods. The legislature has not the power to restrict drummers and runners traveling for wholesale houses from taking orders from people generally, and they cannot by legislation confine the taking of orders to merchants only, as that would be class legislation. And that part of said section, whereby it is attempted to confine the taking of orders for merchandise to merchants only, is unconstitutional and clearly class legislation. But that objectionable feature of said section does not render the whole act unconstitutional and void, as the remaining part of the act is capable of being executed in accordance with the apparent legislative intent wholly independent of that portion attempting to confine the taking of orders to merchants only; the invalid part may be rejected and the valid portion permitted to stand, as we think the legislature would have passed the law regardless of the invalid part thereof. The provisions of said section except from the operation of said act peddlers and hawkers in farm products. That applies, of course, to the farm products of other states as well as those of the state of Idaho, and is not class legislation within the meaning of that term and is not repugnant to the provisions of our constitution, and in no manner interferes with interstate commerce.

Under the stipulated facts it appears that the petitioner takes his buggies with him and travels around among the farmers, and when he sells one he thereupon delivers it to the purchaser. It will be observed that the property at the time of the sale was within the state and under the control of the agent.

This court held in Re Kinyon, 9 Idaho, 642, 75 Pac. 268, that where both the property and the business or occupation are within the jurisdiction of the state, they are subject to its regulation and control, and that any transaction with reference thereto does not look to interstate commerce for carrying out the execution of the contract. This principle was announced and distinction made in Emert v. State, 156 U. S. 296, 15 Sup. Ct. Rep. 367, 39 L. ed. 430, where Mr. Justice Gray said: "The defendant's occupation was offering for sale and selling sewing-machines by go-

ing from place to place in the state of Missouri, in a wagon, without a license. There is nothing in the case to show that he ever offered for sale any machine that he did not have with him at the time. His dealings were neither accompanied nor followed by any transfer of goods, or of any order for their transfer, from one state to another, and were neither interstate commerce in themselves nor were they in any way directly connected with such commerce. The only business or commerce in which he was engaged was internal and domestic; and so far as appears, the only goods in which he was dealing had become part of the mass of property within the state. Both the occupation and the goods, therefore, were subject to the taxing power and the police power of the state. . . . . The necessary conclusion, upon authority as well as upon principle, is that the statute of Missouri now in question is in no wise repugnant to the power of Congress to regulate commerce among the several states, but is a valid exercise of the power of the state over persons and business within its borders."

The only business or commerce in which the petitioner was engaged was internal and domestic, and the vehicles which he was selling had become part of the mass of property within the state. Both the occupation and the property were, therefore, subject to the taxing power and to the police power of the state, and the licensing of that business was a valid exercise of the legislative power of the state over such business and persons engaging therein.

The writ must be denied, and it is so ordered.

Stockslager and Ailshie, J. J., concur.