218 P.2d 695

**ROWE et al. v. CITY OF POCA-TELLO et al.**

No. 7632.

Supreme Court of Idaho.

May 10, 1950.

Louis F. Racine, Jr., of Pocatello, for appellants.

Zener & Peterson, of Pocatello, for respondents.

TAYLOR, Justice.

The plaintiff and appellant Rowe, of Providence, R. I., is engaged in business as "Rowe Craft Studio." The other named plaintiffs are his agents. In pursuit of his business the plaintiff (without request or invitation so to do) goes from door to door of the residences of the city soliciting orders for enlargements of photographs. When an order is taken, the customer furnishes˙a small photograph which is forwarded by the plaintiff to Kansas City, Missouri, where the enlargement is made. A print of the enlargement is returned to the order-taker, who submits it to the customer and obtains further directions as to the coloring and finishing of the portrait. The print is then returned to Kansas City where the order is completed, after which the finished product is returned to the order-taker and by him delivered to the customer.

The city regards plaintiff's method of business as a violation of its ordinance number 4–217, which is as follows:

"Peddling: The practice of going in and upon private residences in the city of Pocatello, Bannock County, State of Idaho, by solicitors, peddlers, hawkers, itinerant merchants and transient vendors of merchandise, not having been requested or invited so to do by the owner or owners, occupant or occupants of said private residences, for the purpose of soliciting orders for the sale of goods, wares and merchandise, and or for the purpose of disposing of and or peddling or hawking the same, is hereby declared to be a nuisance, and punishable as such nuisance as a misdemeanor."

After trial, at which the plaintiff Rowe testified as to his manner of conducting business, substantially as above set out, the trial court entered judgment for the defendants.

The court concluded that plaintiff's method of business is a violation of the ordinance, that it constitutes a nuisance, and is punishable as a misdemeanor; that the ordinance does not violate either the state constitution or the constitution of the Unit-

ed States; and does not impose an undue burden on interstate commerce. These conclusions the appellant assigns as error.

Appellant's first contention is that the method or manner of conducting business described in the ordinance is not a nuisance per se, and that it is therefore beyond the police power of the city to make it a nuisance by ordinance.

The power of a city to declare a nuisance is not limited to that which is a nuisance per se. It may also declare that a nuisance which is such in fact or per accidens. City of Twin Falls v. Harlan, 27 Idaho 769, 151 P. 1191; Beem v. Davis, 31 Idaho 730, 175 P. 959; Porter v. City of Lewiston, 41 Idaho 324, 238 P. 1014; Continental Oil Co. v. City of Twin Falls, 49 Idaho 89, 286 P. 353; State v. Finney, 65 Idaho 630, 150 P.2d 130. A nuisance per se is that which is a nuisance at all times and under all circumstances. A nuisance in fact is that which is not inherently a nuisance, or one per se, but which may become such by reason of surrounding circumstances, or the manner in which conducted. 39 Am.Jur. 289, sec. 11; 46 C.J. 648–9; State v. Atwood, 54 Or. 526, 102 P. 295, 104 P. 195, 21 Ann.Cas. 516. A nuisance per se would be subject to abatement under the statute or common law in the absence of any ordinance. Our statutory definitions of nuisances are quite all-inclusive. Section 52-101, I.C. in part reads: "Anything which is injurious to health or morals, or is indecent, or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, * * *"

The definition in the penal code (sec. 18-5901, I.C.) is similar. The legislature has empowered cities and villages to prevent and remove nuisances, secs. 50-135, 50-313, and 50-707, I.C., and cities of the first class (applicable to Pocatello) "To declare what shall be deemed nuisances;" 50-135, I.C. In addition, under general legislative powers, municipalities are authorized to: "Make all such ordinances, by-laws, rules, regulations, resolutions not inconsistent with the laws of the state, as may be expedient, in addition to the special powers in this title granted, maintaining the peace, good government and welfare of the corporation and its trade, commerce, manufacture, and to enforce all ordinances by inflicting fines or penalties for the breach thereof, * * *" Sec. 50-1109, I.C.

These are broad powers. But in this state acts of the legislature governing municipal police regulations are to be looked to as limitations upon, rather than as grants of power to the municipalities.

"Any county or incorporated city or town may make and enforce, within its limits, all such local police, sanitary and other regulations as are not in conflict with its charter or with the general laws." Constitution Art. 12, sec. 2. This is a direct grant of police power from the people to the municipalities of the state, subject only to the

limitation that such regulations shall not conflict with the general laws. Comprehended in the term, "general laws," are other provisions of the constitution, acts of the state legislature, and, of course, the constitution and laws of the United States. Under this constitutional provision the cities of this state are in a notably different position than are cities in jurisdictions where their police power is strictly limited to that found in charter or legislative grant. In the following cases cited by appellant the cities involved were so restricted. Jewel Tea Co. v. City of Geneva, 137 Neb. 768, 291 N.W. 664; De Berry v. City of La Grange, 62 Ga.App. 74, 8 S.E.2d 146; City of Orangeburg v. Farmer, 181 S.C. 143, 186 S.E. 783; Jewel Tea Co. v. Town of Bel Air, 172 Md. 536, 192 A. 417; White v. Town of Culpeper, 172 Va. 630, 1 S.E.2d 269; City of Osceola v. Blair, 231 Iowa 770, 2 N.W.2d 83; Ex Parte Faulkner, 143 Tex.Cr.R. 272, 158 S.W.2d 525; Prior v. White, 132 Fla. 1, 180 So. 347, 116 A.L.R. 1176. In N. J. Good Humor v. Board of Com'rs, 124 N.J.L. 162, 11 A. 2d 113, the municipality was limited to such powers as have been expressly granted, or necessarily implied, or essential to its objects and purposes. In City of McAlester v. Grand Union Tea Co., 186 Okl. 487, 98 P.2d 924, the court observed that the city has only such powers as are conferred by the legislature, and that the grants are to be strictly construed against the city. A similar rule was applied in this state as to powers not granted directly by the constitution. Bradbury v. City of Idaho Falls, 32 Idaho 28, 177 P. 388.

The Supreme Court has said that the police power is "the least limitable of the powers of government." District of Columbia v. Brooke, 214 U.S. 138, 149, 29 S.Ct. 560, 563, 53 L.Ed. 941, 945. Judge Cooley's definition has been widely accepted.

" 'The police of a state, in a comprehensive sense, embraces its whole system of internal regulation, by which the state seeks not only to preserve the public order and to prevent offenses against the state, but also to establish for the intercourse of citizens with citizens those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own, so far as is reasonably consistent with a like enjoyment of the rights of others.' " Sifers v. Johnson, 7 Idaho 798, 65 P. 709, 54 L.R.A. 785, 97 Am.St.Rep. 271, 11 Am.Jur. 973.

From earliest times, both in England and America, hawking and peddling have been considered a proper subject of police regulation and prohibition. Emert v. State of Missouri, 156 U.S. 296, 15 S.Ct. 367, 39 L. Ed. 430.

"The right of state legislature or municipalities acting under state authority to regulate trades and callings in the exercise of the police power is too well settled to re-

quire any extended discussion." Schmidinger v. City of Chicago, 226 U.S. 578, 33 S.Ct. 182, 184, 57 L.Ed. 364 at page 367, Ann.Cas.1914B, 284. Cf. Continental Oil Co. v. City of Twin Falls, supra.

The subject matter of the ordinance, being within the police power, and properly belonging to the legislative department of government, the courts will not interfere with the discretion, nor inquire into the motives or wisdom, of the legislators. However, it is incumbent upon the judicial department to examine the ordinance and to determine whether or not the legislators have overreached their prerogative and impinged the fundamental law. If the act is found to be unreasonable, capricious, arbitrary, or discriminatory, it will be held void, as an attempt to deny rights guaranteed by the constitutions, both state and national. But if the act is not clearly unreasonable, capricious, arbitrary or discriminatory, it will be upheld, as a proper exercise of the police power. Porter v. City of Lewiston, supra; Ex Parte Hartmann, 25 Cal.App.2d 55, 76 P.2d 709; Ex Parte Mares, 75 Cal.App.2d 798, 171 P.2d 762; People v. Bohnke, 287 N.Y. 154, 38 N.E.2d 478. In City of Idaho Falls v. Grimmett, 63 Idaho 90, 117 P.2d 461, 463, speaking of legislative discretion, this court said: "Every.presumption is to be indulged in favor of the exercise of that discretion, unless arbitrary action is clearly disclosed." and in State v. Finney, supra [65 Idaho 630, 150 P.2d 132]: "The due process and equal protection provisions of these Constitutions are not intended to interfere with the power of the State in the exercise of the police powers to prescribe regulations for the protection and promotion of the welfare of the people. It is only subject to the qualification that the measure adopted for the purpose of regulating the exercise of the rights of liberty and the use and enjoyment of property must be designed to effect some public object which the government may legally accomplish, and it must be reasonable and have some direct, real and substantial relation to the public object sought to be accomplished."

In Schmidinger v. City of Chicago, supra, the Supreme Court quoted from Gundling v. City of Chicago, 177 U.S. 183, 20 S.Ct. 633, 44 L.Ed. 725: " 'Regulations respecting the pursuit of a lawful trade or business are of very frequent occurrence in the various cities of the country, and what such regulations shall be, and to what particular trade, business, or occupation they shall apply, are questions for the state to determine, and their determination comes within the proper exercise of the police power by the state, and unless the regulations are so utterly unreasonable and extravagant in their nature and purpose that the property and personal rights of the citizen are unnecessarily, and in a manner wholly arbitrary, interfered with or destroyed without due process of law, they do not extend be-

yond the power of the state to pass, and they form no subject for Federal interference.' "

In Prior v. White, Jewel Tea Co. v. City of Geneva, and McAlester v. Grand Union Tea Co., supra, and others, the courts, further pursuing their rule of strict construction of municipal powers, have held that solicitation from door to door could constitute only a private nuisance (if disagreeable to the individual householders) and not a public nuisance. The reasoning is that to constitute a public nuisance the act must affect "at the same time an entire community or neighborhood, or any considerable number of persons," and that since the solicitor "can be at only one place at one time," "such a call cannot reasonably be said to disturb at the same time an entire community or neighborhood or any considerable number of persons." And the city, having authority to abate public nuisances only, cannot ban soliciting. Such reasoning seems more apologetic than convincing. It underestimates the agility of the solicitor, who has been known to ring the door bells of an entire neighborhood in an afternoon. But assuming the correctness of these decisions in jurisdictions where municipal police powers are strictly construed, they are not precedents where, as here, the municipalities are not thus limited. Here, the city having the broad power to make all such local police regulations as are not in conflict with the general laws, and the regulation of soliciting

being within the police power, the city could ban the practice of uninvited intrusion upon private residences without declaring it a nuisance. The city could omit the declaration of nuisance, and merely declare it a misdemeanor. Const. Art. 12, sec. 2; 22 C.J.S., Criminal Law, § 1 b., page 49, § 15, page 65; 62 C.J.S., Municipal Corporations, § 145, p. 301; 14 Am.Jur. 753, 759–60; Town of Green River v. Bunger, 50 Wyo. 52, 58 P.2d 456; McCormick v. City of Montrose, 105 Colo. 493, 99 P.2d 969. Many acts, malum prohibitum, which are private wrongs in nature, have been made public wrongs, or crimes, by legislation, in the interest of public safety or public welfare, or "to promote the public convenience or the general prosperity." Particular attention is directed to what was said, anent police power, by the Supreme Court of the United States in upholding the Idaho 2-mile limit grazing law, in Bacon v. Walker, 204 U.S. 311, 27 S.Ct. 289, 51 L.Ed. 499, as quoted and applied in McCormick v. City of Montrose, 105 Colo. 493, 99 P.2d 969, at page 973. See also Omaechevarria v. State of Idaho, 246 U.S. 343, 38 S.Ct. 323, 62 L.Ed. 763.

Some of the authorities cited by appellant (Prior v. White; Jewel Tea Co. v. City of Geneva; De Berry v. City of La Grange; City of Osceola v. Blair, supra; City of Mt. Sterling v. Donaldson Baking Co., 287 Ky. 781, 155 S.W.2d 237) argue that the solicitor or peddler may take custom and usage as implying consent or

invitation of the householder, to his call. This is circuitous reasoning. "It is well settled that a custom or usage repugnant to the provisions of a statute is void, and, whenever there is a conflict between a custom or usage and a statutory regulation, the statutory regulation must control." Mechanics & Metals Nat. Bank of City of New York v. Pingree, 40 Idaho 118, 130, 232 P. 5, 8. Davidson Grocery Co. v. Payette Equity Ex., 51 Idaho 423, 6 P.2d 149; 17 C.J. 475; 25 C.J.S., Customs and Usages, § 10. The enactment of the ordinance operates to repeal or extinguish the custom. 55 Am. Jur. 280. In the Montrose case, the Colorado court also said the ordinance has the effect of withdrawing any previously existing implied invitation, and of making the solicitor a trespasser if he attempts to continue the practice. Surely the courts cited do not intend to infer that through the exercise of the custom the solicitor has acquired a vested right. A man's house is still his castle. He may exclude whom he chooses. No matter how long continued, no vested right can accrue to solicitors or peddlers to make it a place for the transaction of their business contrary to the wishes of the owner. On this point the Colorado court said: "As against the householder, one going in and upon a private residence to solicit has no right that he can protect or enforce. The moment the consent of the householder is withdrawn the right resting on such consent vanishes." Indeed, the very constitutional guarantees of life, liberty, property and equal protection, which appellant seeks to invoke, are the same provisions which guarantee the right of the householder to the quiet, peaceful, and undisturbed enjoyment of the privacy of his home.

The householders individually having the right to exclude solicitors and peddlers, there can be no valid reason why they cannot do so collectively through their representatives comprising the city council. The presumption is that in adopting the ordinance the council expressed the wishes of the majority of the householders. The right of the minority is respected. They may extend an invitation by a sign at the door or other appropriate means. It seems much more reasonable to require the minority to assert its right in this manner than to require the majority to do so. This however, serves but to point up the fact that it is a problem of local concern, to be determined in keeping with the will of the electors, in accord with local conditions, and the wisdom and discretion of the council. Such questions are not to be resolved by the judicial department.

Considerations bearing on the question of reasonableness have been variously stated:

"The home is a favorite of the law. It is there that the citizen can claim the right of privacy, the right to be let alone, on clear grounds. For the protection of this right the ordinary remedies by civil suit are available, but these remedies are hardly

adequate when annoyance is caused by frequent entries by different persons who follow each other and act independently." Town of Green River v. Bunger, 50 Wyo. 52, 58 P.2d 456, at page 460.

"We think like practices have become so general and common as to be of judicial knowledge, and that the frequent ringing of door-bells of private residences by itinerant vendors and solicitors is in fact a nuisance to the occupants of homes. It is not appellee and its solicitors and their methods alone that must be considered in determining the reasonableness of the ordinance, but many others as well who seek in the same way to dispose of their wares. One follows another until the ringing door-bells disturb the quietude of the home and become a constant annoyance." Town of Green River v. Fuller Brush Co., 10 Cir., 65 F.2d 112, at page 114, 88 A.L.R. 177.

" 'The dogged, tenacious and sometimes pugnacious determination with which salesmen have literally flung themselves through residential portals and at householders, the transient nature of their principal places of business, their financial irresponsibility in many instances, and an early and very general tendency to defraud the unwary must have borne considerable weight upon the minds of those who have been instrumental in putting such regulatory legislation upon statute and ordinance books of our states and municipalities.' " Green v. Town of Gallup, 46 N.M. 71, 120 P.2d 619, at page 622, 6 Rocky Mountain L.R. 85.

■ It is not contended that the ordinance is discriminatory. In a number of the decisions cited the ordinances considered were found to be discriminatory, and invalid for that reason. Such authorities do not support appellant. Here the ordinance applies alike to all and is not discriminatory.

■ As to appellants' contention that the ordinance places an undue burden on interstate commerce, the general rule is that if the regulation is within the police power of the state, and is a reasonable and not an arbitrary exercise of that power, it will not be held repugnant to the commerce clause even though it incidentally or indirectly affects interstate commerce. A consideration of the following decisions indicates that the ordinance does not offend the rule. Sligh v. Kirkwood, 237 U.S. 52, 35 S.Ct. 501, 59 L.Ed. 835; Wagner v. City of Covington, 251 U.S. 95, 104, 40 S.Ct. 93, 64 L.Ed. 157, 168; New York, N. H. & H. R. Co. v. People of State of New York, 165 U.S. 628, 17 S.Ct. 418, 41 L.Ed. 853; Town of Green River v. Fuller Brush Co., 10 Cir., 65 F.2d 112, 88 A.L.R. 177; Town of Green River v. Bunger, supra; Ex Parte Hartmann, Cal., supra; Ex Parte Mares, supra; Commonwealth v. Gardner, 133 Pa. 284, 19 A. 550, 7 L.R.A. 666, 19 Am.St.Rep. 645; Nippert v. City of Richmond, 183 Va. 689, 33 S.E.2d 206. Most of the authorities cited by appellant on this point deal with cases in which the state or municipality sought to impose a license tax upon per-

sons engaged in interstate commerce. The federal Supreme Court and the state courts have consistently held that the state cannot thus tax or regulate interstate commerce. See: In re Kinyon, 9 Idaho 642, 75 P. 268, 2 Ann.Cas. 699; In re Abel, 10 Idaho 288, 77 P. 621. Such cases are not applicable here. .

 The same ordinance has been held valid in the following cases: Town of Green River v. Fuller Brush Co., supra; Town of Green River v. Bunger, supra; McCormick v. City of Montrose, supra; Green v. Gallup, supra; Ex Parte Lewis, 141 Tex.Cr.R. 83, 147 S.W.2d 478; City of Shreveport v. Cunningham, 190 La. 481, 182 So. 649. For the reasons expressed by those courts, and the reasons stated herein, we hold that the ordinance in question is not an unreasonable exercise of the police power of the defendant city, and that it does not violate any constitutional right of the plaintiff under either of the provisions cited. Article 1, sections 1 and 13, Constitution of Idaho; Amd't 14, section 1, Constitution of the United States. These additional authorities also support the conclusion reached: Ex Parte Porterfield, 63 Cal. App.2d 518, 147 P.2d 15; Hall v. Commonwealth, 188 Va. 72, 49 S.E.2d 369; Williams v. State of Arkansas, 217 U.S. 79, 30 S.Ct. 493, 54 L.Ed. 673, 18 Ann.Cas. 865; City of Pittsburgh v. Ruffner, 134 Pa.Super. 192, 4 A.2d 224; Moore v. Village of Ashton, 36 Idaho 485, 211 P. 1082, 32 A.L.R. 1512. See also, Town of Green River v. Fuller Brush Co., 10 Cir., 65 F.2d 112, 88 A.L.R.. 183; Prior v. White, 132 Fla. 1, 180 So. 347, 116 A.L.R. 1189:

Judgment affirmed. Costs to respondents.

HOLDEN, C. J., and GIVENS, PORTER and KEETON, JJ., concur.