437 P.2d 14

**REYNOLDS CONSTRUCTION CO., an Idaho Corp. et al., Plaintiffs-Appellants,**

v.

**The COUNTY OF TWIN FALLS, State of Idaho, and Heber Loughmiller, Morris Carlson and William Chancey, Members of the Board of County Commissioners of Twin Falls County, State of Idaho, Defendants-Respondents.**

No. 10075.

Supreme Court of Idaho.

Feb. 6, 1968.

Moffatt, Thomas, Barrett & Blanton, Boise, for appellants.

Michael H. Felton, Pros. Atty., Twin Falls County and Lloyd J. Webb, Twin Falls, for respondents.

McFADDEN, Justice.

The plaintiffs, hereinafter referred to as appellants, are either corporations, partnerships, or individuals, all having businesses in Twin Falls County, Idaho, and all are real property owners therein. The defendants, hereinafter referred to as respondents, consist of the county of Twin Falls, a political subdivision of the state, and the members of the board of county commissioners of that county.

This action was instituted by appellants seeking injunctive relief, both temporary and permanent, to restrain construction by respondent county of a building designated as a "courthouse annex." The complaint also sought a judgment declaring that the actions of respondent county commissioners in authorizing the construction of the courthouse annex and the expenditure of funds in the manner alleged were illegal. The trial court entered its findings of fact and conclusions of law in favor of respondents and entered judgment denying relief to appellants, from which judgment this appeal was perfected.

In brief, the facts leading to this litigation are as follows: During the 1967 session of the Idaho Legislature, an additional district judge was authorized for the fifth judicial district of this state, with resident chambers in Twin Falls County. S.L.1967, Ch. 51, § 1, p. 95; I.C. § 1–806. Sec. 3 of the act provided: "This act shall be in full force and effect from and after July 1, 1967." It was approved on March 1, 1967.

The senior district judge of what was then the eleventh judicial district discussed

with respondent commissioners the need for accommodations for the new district judge to be appointed to serve in Twin Falls County. By letter dated April 19, 1967, addressed to respondent commissioners, the judge referred to the necessity of having a court reporter for the new judge (I.C. § 1–1101) and called their attention to the provisions of I.C. § 1–1613, which provides:

"If suitable rooms for holding district courts and the chambers of the judges of such courts be not provided in any county by the commissioners thereof, together with attendants, furniture, fuel, lights and stationery sufficient for the transaction of business, the court may direct the sheriff of such county to provide such rooms, attendants, furniture, fuel, lights and stationery, and the expenses thereof are a charge against such county."

April 25, 1967, respondent commissioners adopted the following:

"*DECLARATION OF EMERGENCY*

"The undersigned Commissioners of the County of Twin Falls, State of Idaho, hereby declare on the 25th day of April, 1967, that an emergency exists. Said declaration is made pursuant to Section 67–2305 of the Idaho Code. The reasons for the declaration of emergency are as follows:

1. That in the opinion of the Commissioners of the County of Twin Falls, State of Idaho, contract prices, if construction of a judicial annex to the Twin Falls County Court House were put up for bids would be unreasonable on account of labor and material price.

2. That pursuant to House Bill No. 68 of the 1967 Legislature, of the State of Idaho, has provided for an additional district judge with resident chambers at Twin Falls, Idaho, and that facilities must be provided on or before July 1, 1967, when said Judge shall take office. That if the construction of said building were done on the basis of bids of general contractors, it would be practi-

cally June of 1967, or later before construction could begin.

For the above and foregoing reasons, a state of emergency is hereby declared relative to the provision of facilities for an additional district judge, in and for the County of Twin Falls, and for that reason it is hereby determined that work shall begin immediately with day labor to be hired by the County of Twin Falls, State of Idaho, and that bids for materials and labor for electrical, mechanical, plumbing and other technical service shall be made after submission of bids and to the lowest responsible bidder."

Respondent commissioners also adopted the following resolution:

"Commissioner Carlson made the motion seconded by Commissioner Chancey that the following resolution be adopted.

WHEREAS a condition exists concerning the providing of necessary accomodations for an additional District Judge which calls for immediate action.

WHEREAS that pursuant to House Bill No. 68 passed by the 1967 Legislature and approved by the Governor, the Fourth Judicial District and the Eleventh Judicial District become consolidated into the new Fifth Judicial District, requiring two judges to have resident chambers at Twin Falls, Idaho.

WHEREAS there is an emergency existing concerning this problem which was unforeseen by the Board of County Commissioners at the time of drawing up the budget, and there is need for an additional $140,000.00 to meet such emergency.

NOW THEREFORE, be it resolved that an appropriation of $140,000.00 from the General Reserve Appropriation Fund is hereby made to account of the County Commissioner's Budget and be a supplement thereto to be designated as the Building Budget in accordance with Sections 31–1605, 31–1608, Idaho Code."

Thereafter, respondent commissioners retained the services of an architect to prepare plans for the annex, hired a super-

visor, and commenced construction of the courthouse annex with the county employing labor by the hour and securing materials without first advertising for written bids.

At the time of the argument of this case in this court, an affidavit was filed by respondents wherein it is stated that the construction of the courthouse annex building was ninety-five percent complete and that all remaining work was expected to be completed within fifteen days. Even though construction of the building was substantially completed at the time of the argument, and the question whether an injunction should have been entered by the trial court is no longer of concern, the other justiciable issues presented by this appeal will be considered.

Appellants contend that respondents were not authorized to construct the courthouse annex as was done, asserting that construction of a county building can be accomplished only after preparation of plans and specifications, followed by advertisement for bids, and award of a contract to the lowest bidder. Respondents, on the other hand, assert that the law contains no prohibition of construction of the building by the county itself as was done here and further, that respondent commissioners were acting within their statutory authority in determining the existence of the declared emergency. Respondents further claim that the trial court was correct in its determination and conclusion that it lacked jurisdiction to question the correctness of the commissioners' declaration of an emergency necessitating the construction by county employees. Several of the same statutory provisions are cited by both parties, including I.C. § 31–1001, which provides in pertinent part:

"The board must cause to be erected or furnished, a courthouse, jail and such other public buildings as may be necessary, and must, when necessary, provide offices with necessary furniture for the sheriff, clerk of the district court and ex officio auditor and recorder, county treasurer, prosecuting attorney, probate judge, county assessor and county surveyor, and must draw warrants in payment of the same: provided, that the contract for the erection of any such buildings must be let, after thirty (30) days' notice for proposals, to the lowest bidder who will give security for the completion of any contract he may make respecting the same; and, provided further, no contracts for the purchase of furniture must be let under the provisions of this section when the expenses thereunder will exceed $1000. * * *."

Appellant's view of this provision is that it is mandatory upon the commissioners to construct a courthouse only by letting it out for contract to the lowest bidder; respondents, however, contend that the bid and contract procedure is not the exclusive method of construction, but that the commissioners may construct the building with personnel hired by the county, using equipment rented by the county, and building materials purchased by the county.

In resolving these conflicting contentions, this court has examined the historical development of this particular statutory provision.[1] Authority to construct a building of necessity must be buttressed by the availability of funds for the purpose of paying the contractor; or if the building is to be constructed by the county, by funds to pay the salaries of the personnel hired, and rentals of equipment, cost of materials and all other costs incurred in the construction of a building. In other words, mere authority to construct a building is totally meaningless unless that authority also extends to the payment of the costs of construction, regardless of how accomplished, and payment of such costs necessarily requires the availability of funds.

1. Idaho Terr.Laws (1875) p. 520 § 13, § 14; am. Idaho Laws (1905), p. 228, § 1; am. (1925), ch. 85, § 1, p. 119; am. (1951), ch. 222, § 1, p. 358; am. (1963), ch. 106, § 1, p. 328; am. (1967), ch. 330, § 1, p. 965. See also Idaho Laws (1905) p. 73, §§ 1–7 and subsequent amendments.

Generally county funds arise from one of two sources—taxation (which term as used here encompasses not only the ad valorem taxes, but also the charges made for filing fees, fines, etc.) and from bonding.

The legislature over the years has adopted various acts imposing a duty upon the county officials to submit budgets to form the basis for their expenditures in the ensuing year. I.C. § 31–1602. The code provisions concerning county budgets in effect at the time involved herein are to be found in Chapter 16 of Title 31, Idaho Code. The budgets as adopted by the commissioners establish the base for the levy of the taxes within the statutory limits. Ch. 9, Title 63, Idaho Code. I.C. § 31–1605 states in part:

> "Thereafter, at the time provided by law, [I.C. § 63–901] the board of county commissioners shall fix the levies necessary to raise the amount of expenditures as determined by the adopted budget, less the total estimated revenues from sources other than taxation, including available surplus, as determined by the board, and such expenditures as are to be made with the proceeds of authorized bond issues."

I.C. § 31–1605 also authorizes the board of county commissioners to make an appropriation not to exceed five per cent of the current expense budget (however, to be within the limitations imposed by Chapter 9 of Title 63), to be used "In the event of any unforeseen contingency arising * *."

I.C. § 31–1608 authorizes expenditures to be made to meet emergencies employing therein the terms "happening of any emergency caused by fire, flood, explosion, epidemic, riot or insurrection, or for the immediate preservation of order or of public health or for the restoration to a condition of usefulness of public property, * * *." The expenditures under this provision are to be paid from available funds, and if such funds are insufficient, it authorizes the use of warrants for payment. The next annual budget is to include any such emergency warrants so issued, and the commissioners are required to make an appropriation to pay such warrants.

It is thus to be seen that the legislature has authorized the expenditure of funds by a county on an annual basis. Generally, the respective officials are to submit to the county budget officer their estimates of income and expenditures to their office for the ensuing year. I.C. § 31–1602. The budget officer (the county auditor) prepares and submits the preliminary budget to the commissioners. I.C. § 31–1602. The commissioners on the second Monday of January are then expected to give their tentative approval of the budget, and authorize expenditures between that date and final approval. I.C. § 31–1604. On the second Monday of February, the commissioners conduct a hearing on the tentative budget, following which they fix and determine the budgets for each office, department, service, agency or institution of the county, which constitutes an appropriation of the amounts approved. I.C. § 31–1605. In the following September, the commissioners are required to set the ad valorem tax levies for the next succeeding year, based on the previously determined assessed valuation of county property. In determination of the tax levies, I.C. § 31–1605 requires that the commissioners:

> "* * * shall fix the levies necessary to raise the amount of expenditures as determined by the adopted budget, less the total estimated revenues from sources other than taxation, *including available surplus,* as determined by the board, and such expenditures as are to be made with the proceeds of authorized bond issues." (Emphasis added.)

See Idaho Const. Article 7, § 15, which states: "The legislature shall provide by law, such a system of county finance, as shall cause the business of the several counties to be conducted on a *cash basis.*" (Emphasis added.) See Idaho Const. Art. 8, § 3, which states: "No county * * * shall incur any indebtedness, or liability, in any manner, or for any purpose, exceeding in that year, the income and revenue provided for it for such year, without the assent of two-thirds of the qualified electors thereof, * * *."

In theory, compliance with the statutory provisions discussed above eliminates the possibility of accumulation by the county of any substantial sum over and above that needed to meet the annual budgets as adopted, because the commissioners first must determine the amount of funds necessary to be raised to meet the budgets, then deduct from such sum the revenues from other sources, "including available surplus," and only then set the tax levy (within statutory limitations) needed to meet the budgetary requirements. I.C. § 31–811 authorizes the county commissioners "To levy such tax annually on the taxable property of the county as may be necessary *to defray the current expenses thereof* * * *." (Emphasis added.)

The board of county commissioners is the chief executive authority of the county government. I.C. § 31–828. In that capacity the board is required "To supervise the official conduct of all county officers * * *." I.C. § 31–802. Chapter 8 of Title 31, Idaho Code, enumerates the powers and duties of the board of county commissioners, with I.C. § 31–807 authorizing purchase of real and personal property necessary for the use of the county. However, authority to construct county buildings is not to be found in Chapter 8, but is to be found in Chapter 10 of Title 31, wherein the commissioners are authorized to erect county buildings, furnish them, or to lease courthouse premises, rooms, jail, etc., and to enter into lease purchase agreements subject to provisions of Chapter 40 of Title 31. Chapter 10 also provides for the means of financing the construction of a courthouse by issuance of bonds authorized by two-thirds vote at a bond election, or in the alternative to establish a "County Building Construction Fund" by an annual levy of not exceeding three mills on the dollar of assessed valuation, as authorized by approval of two-thirds vote at an election.

When I.C. § 31–1001 is read in conjunction with the statutes regarding county finances, the conclusion is inescapable that the board of county commissioners which "must cause to be erected or furnished, a courthouse, jail and such other public buildings as *may be necessary* * * *," (emphasis added), are limited in fulfillment of this duty to the extent that they cannot incur any indebtedness or liability in any year in excess of revenue provided (Idaho Const. Art. 8, § 3 and I.C. § 31–1605), and they cannot transfer any money from one fund to another, except in cases expressly provided and permitted by law (I.C. § 31–1502). If current funds are to be expended for such purpose, such funds must be budgeted, and expenditures made within these limits (I.C. 31–1605). If the obligation of causing "to be erected or furnished, a courthouse and such other buildings" is to be fulfilled by other means, here again stringent limitations are imposed. If by a bond issue, an election with two-thirds voter approval is required (Idaho Const. Art. 8, § 3 and I.C. § 31–1003) and then preparation of plans and specifications, and advertising for bids, with award to the lowest responsible bidder with performance bond and prerequisites. However, if construction is to be from funds accumulated into a county building construction fund (I.C. § 31–1008) again plans and specifications for the building are required, with contracts let.

No contention is made herein that there was any attempt made to comply with the requirements of preparation of plans and specifications, advertising for bids, and awarding of contract.

Moreover, the phraseology of I.C. § 31–1001 is in terms that would not allow construction of the county building without letting it out for bid. This provision does not state "the board must erect or furnish, * * *," but provides that "The board must *cause to be erected,* * * *," and then states "provided, that *the contract* for the erection of any such buildings must be let, * * *."

It is the conclusion of this court that authority is not to be found in I.C. § 31–1001 for the construction of this building by respondents in the manner they did. How-

ever, respondents contend that the action taken by the board on April 19, 1967, in declaring an emergency to exist, following which they enacted the resolution transferring $140,000 from the "General Reserve Appropriation Fund" to the "County Commissioner's Budget," as a supplement thereto designated as the "Building Budget," is fully determinative of any issues on this appeal.

In the instant case, the trial court specifically concluded that it lacked the power to interfere with the respondents' determination of the existence of an emergency. Respondents contend the trial court was manifestly correct in this conclusion, citing Shields v. City of Loveland, 74 Colo. 27, 218 P. 913 (1923); Western Heights Land Corp. v. City of Fort Collins, 146 Colo. 464, 362 P.2d 155 (1961); City of Phoenix v. Landrum & Mills Realty Co., 71 Ariz. 382, 227 P.2d 1011 (1951); Greenberg v. Lee, 196 Or. 157, 248 P.2d 324, 35 A.L.R.2d 567 (1952); Potter v. City of Compton, 15 Cal.App.2d 232, 59 P.2d 537 (1936) and the annot. in 35 A.L.R.2d 586, 587.

In the two Colorado cases, cited supra, the issue was whether the courts could review a declaration by a city council of an emergency for an ordinance to take effect immediately. In those cases the Colorado court held that the determination of an emergency was the exercise of a legislative and not a judicial function and could not be questioned. In Western Heights Land Corp. v. City of Fort Collins, supra, the court expressed itself as follows:

"Whether an emergency calling for the passage of an ordinance by a municipality exists is a matter for determination by its duly constituted legislative body. Its resolution of the facts in such cases is binding upon the courts unless it is apparent from the ordinance itself that an emergency does not and could not exist." 362 P.2d at 159.

The Arizona court in City of Phoenix v. Landrum & Mills Realty Co., supra, applied the same rule to the declaration of an emergency by a city council that it applies to a declaration of an emergency by the legislative body, and held: "The city council having determined an emergency to exist it is without our power here to review that decision."

The Oregon court in Greenberg v. Lee, supra, also was dealing with the issue of the validity of an emergency clause in a city ordinance, and held that where the city council enacts an emergency ordinance pursuant to its charter, the wisdom or expediency of the council's determination of existence of an emergency is not subject to judicial review.

In Potter v. City of Compton, supra, the California court did not go so far as the other cases above discussed. There that court, in considering the validity of declaration in a municipal ordinance of an emergency, ruled that the declaration of the council is prima facie evidence of the existence of an emergency sufficient to justify the action taken, and held that the approval by the trial court and the reasons which prompted the action were meritorious and sufficient.

The annotation cited by respondents (35 A.L.R.2d 586) deals with the questions presented by an emergency clause in a municipal ordinance. However, it is said on p. 586–587, "The present annotation is concerned particularly with the conclusiveness of declarations of emergency in municipal ordinances considered with reference to charter provisions as to the time when an ordinance may take effect * * *." It should be noted that the foregoing cases cited by respondents all deal with that same question. An annotation dealing with emergencies in relation to contracting out of work is found at 71 A.L.R. 173. It is this latter question with which we are concerned.

■ Here, respondent county commissioners are relying on the declaration of an emergency as the reason to deviate from the general procedure of letting of a contract to the lowest bidder. In such situation the courts are almost unanimous in holding that such declaration of an emer-

gency is reviewable by the judiciary. Safford v. City of Lowell, 255 Mass. 220, 151 N.E. 111 (1926); Scatuorchio v. Jersey City Incinerator Authority, 14 N.J. 72, 100 A.2d 869 (1953); Rodin v. Director of Purchasing of· Town of Hempstead, 38 Misc.2d 362, 238 N.Y.S.2d 2 (N.Y.Sup.Ct. 1963).

This court has been called upon to consider the question of whether the judiciary may review decisions made by a city council, a village board and the Idaho Board of Highway Directors. Rowe v. City of Pocatello, 70 Idaho 343, 218 P.2d 695 (1950), held that it was within the province of the city council to enact a "Green River" ordinance. Therein it was stated:

"The subject matter of the ordinance, being within the police power, and properly belonging to the legislative department, of government, the court will not interfere with the discretion, nor inquire into the motives or wisdom, of the legislators. However, it is incumbent upon the judicial department to examine the ordinance and to determine whether or not the legislators have overreached their prerogative and impinged the fundamental law. If the act is found to be unreasonable, capricious, arbitrary, or discriminatory, it will be held void, as an attempt to deny rights guaranteed by the constitutions, both state and national. But if the act is not clearly unreasonable, capricious, arbitrary or discriminatory, it will be upheld, as a proper exercise of the police power." 70 Idaho at 350, 218 P.2d at 699.

Larsen v. Village of Lava Hot Springs, 88 Idaho 64, 396 P.2d 471 (1964), involved the judicial review of a determination by a village board of the proper location of a sewerage treatment lagoon. Therein, in discussing the scope of review by the judiciary, this court stated:

"The Village in the exercise of its discretionary power, consistent with its legislative grant of power, may locate and construct a sewage treatment and disposal plant. The courts will not inter-

fere with the exercise of such powers by municipal corporations; the exercise thereof is not subject to judicial review, except in a clear case of abuse of power, i. e., where it appears that the municipality and its officials have manifestly acted arbitrarily, capriciously, or in an unreasonable manner so as to create a nuisance in fact." 88 Idaho at 73, 396 P.2d at 476.

In Villages of Eden and Hazelton v. Idaho Bd. of Hwy. Dir., 83 Idaho 554, 367 P.2d 294 (1961), it was held that the Idaho Board of Highway Directors exercises legislative power in location of highways, and that no appeal as such lies from such determination. Thus, it will be seen that the judiciary may review the decisions of the city council or board of village trustees, to determine whether such boards "have overreached their prerogative and impinged the fundamental law," or if the act is "unreasonable, capricious, arbitrary, or discriminatory" (Rowe v. City of Pocatello, supra) or whether it "appears that the municipality and its officials have manifestly acted arbitrarily, capriciously, or in an unreasonable manner * * *."

I.C. § 31–1608, in dealing with emergency authority of the board of county commissioners requires unanimous adoption of a resolution "stating the facts constituting the emergency." This requirement to recite the facts constituting the emergency would be meaningless if it were to be held that the judiciary could not review the basis for the decision. See Rodin v. Director of Purchasing of Town of Hempstead, supra.

I.C. § 31–1608 (relied upon by the commissioners in their resolution of April 25, 1967, and referred to above), which is a part of the county budget law (Ch. 16, Title 31, I.C.) enacted in 1931, provides in part:

"Upon the happening of any emergency caused by fire, flood, explosion, storm, epidemic, riot or insurrection, or for the immediate preservation of order or of public health or for the restoration to a condition of usefulness of public

property, the usefulness of which has been destroyed by accident, or for the relief of a stricken community overtaken by a calamity \* \* \* or to meet mandatory expenditures required by law \* \* \* the board of county commissioners may, upon the adoption, by the unanimous vote of the commissioners, of a resolution stating the facts constituting the emergency and entering the same upon their minutes, making [make] the expenditures necessary to investigate, provide for and meet such an emergency."

The section then continues setting forth the method by which the expenditure is to be paid, i. e., from moneys in the county treasury or by warrant, and if warrants are used and unpaid in one year, appropriations are to be made in the succeeding year to pay them.

It is to be noted that by I.C. § 31–1605 (S.L. 1931, Ch. 122) the board of county commissioners "shall also have the right to make a 'general reserve appropriation' not to exceed five per cent of the current expense budget as finally adopted," within limitations of Ch. 9 of Title 63. This section continues:

"In the event of any unforeseen contingency arising, which could not reasonably have been foreseen at the time of making the budget, and which shall require the expenditure of money not provided for in the budget, the board of county commissioners, by unanimous vote thereof, shall have the right to make an appropriation from the 'general reserve appropriation' to the office, department, service, agency or institution in which said contingency arises, in such amount as shall be determined by resolution of said board. Provided, however, that no such appropriation shall be made for any purpose, otherwise provided for in the budget, to any office, department, service, agency or institution; provided, further, no appropriation may be made from the 'general reserve appropriation' to any county fund which is authorized under the law to make a special levy."

The expenditures of funds for an "unforeseen contingency," would, of course, be required to be within the budgetary limits. I.C. § 31–1606. In enactment of this provision, which was adopted as § 6 of the same act which adopted I.C. § 31–1608, the legislature of necessity in using the term "unforeseen contingency" had in mind a situation other than that provided for under I.C. § 31–1608, which is not limited to the budgetary limitations of I.C. § 31–1606.

I.C. § 67–2305 provides:

"In case of imminent danger to life, or the destruction of property, or when contract prices are unreasonable on account of labor and material conditions, or are unreasonable for any other cause or when conditions affecting any work make it inadvisable to let the work by contract, the official in responsible charge of any state department or political subdivision of the state may declare an emergency to exist and may execute the work by day labor or any other manner necessary to meet the emergency."

This provision was enacted as Sec. 1 of S.L. 1921, Ch. 178, and prior to enactment of S.L. 1931, Ch. 122, now Ch. 16 of Title 31, Idaho Code, entitled "County Budget Law." I.C. § 67–2305 embraces substantially the same subject matter as that of I.C. § 31–1608, but does not designate the method by which the expenses incurred would be paid. Upon adoption of the "County Budget Law," the method by which expenditures for emergencies would be paid is explicitly set out. Under such circumstances, it is our conclusion that upon adoption of provisions of Ch. 16 of Title 31, Idaho Code, the provisions of I.C. § 67–2305 became inapplicable insofar as counties are concerned when faced with an emergency situation. See State v. Roderick, 85 Idaho 80, 375 P.2d 1005 (1962); Rydalch v. Glauner, 83 Idaho 108, 357 P.2d 1094 (1960); State v. Mayer, 81 Idaho 111, 338 P.2d 270 (1959); State v. Teninty, 70 Idaho 1, 212 P.2d 412 (1949); Herrick v. Gallet, 35 Idaho 13, 204 P. 477 (1922).

In adopting the resolution on April 25, 1967, no reference was made to I.C. § 67–2305, although it was referred to in the "Declaration of Emergency" adopted the same day, and therein one of the reasons for the declaration of the emergency was that "contract prices, if construction of a judicial annex to the Twin Falls County Court House were put up for bids would be unreasonable on account of labor and material price." However, the individual members of the board, in their testimony before the trial court admitted that they had not sought any bids other than a brief discussion with one contractor, and they were unable to point to any specific labor or material prices that were unreasonable to justify this statement. In this situation, it is difficult to see how the respondents can rely upon the provisions of I.C. § 67–2305, authorizing declaration of an emergency when "contract prices are unreasonable on account of labor and material conditions."

 I.C. § 31–4013 provides:

"If there is a great public calamity, as an extraordinary fire, flood, storm, epidemic, or other disaster, or if it is necessary to do emergency work to prepare for national or local defense, the board of county commissioners may pass a resolution declaring that the public interest and necessity demand the immediate expenditure of public money to safeguard life, health or property. Upon adoption of the resolution, it may expend any sum required in the emergency without complying with this act."

This provision, a part of Chapter 40 of Title 31, was enacted as a part of S.L. 1963, Ch. 124. I.C. § 31–4001, defines the applicability of this chapter as follows:

"This act shall apply to all counties of the state of Idaho, but shall be subject to the provisions of any specific statute pertaining to letting of any contract or the purchase or acquisition of any commodity or thing by any county by soliciting and receiving competitive bids therefor, and shall not be construed as modifying or amending the provisions of any such statute, nor preventing the county from doing any work by its own employees."

Thus, I.C. § 31–4013 must be read in conjunction with the provisions of I.C. § 31–1608, a part of the county budget law, and cannot be considered as expanding its provisions. The same is true insofar as I.C. § 31–4012 is concerned, it being also a part of Chapter 40 of Title 31, which chapter sets out the specific method for contracting, advertising for bids, bid requirements, and other items concerning awarding of contracts on bid. I.C. § 31–4012 specifically deals with the situation where bids have been rejected and provides if bids have been rejected, upon a resolution being adopted, the thing to be accomplished can be performed by day labor or purchase upon the open market. This chapter is not applicable to the facts as are here present.

 Thus, the only statutory provision that can aid the respondent commissioners in their declaration of an emergency is I.C. § 31–1608, and it is our conclusion that the trial court was in error in its conclusion that it could not review the action of the board in determination of the emergency. This conclusion is based upon the right of the judiciary to review the acts of city councils and boards of trustees (Rowe v. City of Pocatello; Larsen v. Village of Lava Hot Springs, both supra) and also upon the requirement of I.C. § 31–1608 that the board's resolution must state the facts constituting the emergency, which of necessity presupposes right of review of the facts set forth in the resolution.

 Because of the trial court's error in this regard, the conclusions of law and judgment are in error. That part of the judgment denying injunctive relief is not in error inasmuch as the subject matter of this appeal to all intents and purposes had been completed and reversal of the judgment herein of necessity can only operate on that portion of the judgment

 

dealing with the prayer for declaratory relief.

Thus, the judgment of the case is affirmed in part and reversed in part and the cause remanded with directions to the trial court to enter new findings of fact, conclusions of law, and judgment in conformity with the views herein expressed.

No costs allowed.

TAYLOR, C. J., and SMITH, McQUADE and SPEAR, JJ., concur.